UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALEXIS EVERINGTON, and
RICHARD WHITE

      Plaintiffs,

v.                                  Case No: 8:23-cv-02386-JLB-NHA

TIMOTHY J. RIESEN,

      Defendant.

_____/

### DEFENDANT'S MOTION TO DISMISS COMPLAINT, OR ALTERNATIVELY, FOR A MORE DEFINITE STATEMENT

Defendant, Timothy J. Riesen (the "Defendant" or "Riesen"), by and through undersigned counsel and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, moves to dismiss the Complaint filed by the Plaintiffs, Alexis Everington ("Everington") and Richard White ("White") (collectively, the "Plaintiffs"). In support, the Defendant states as follows:

### INTRODUCTION

1. The Plaintiffs allege that they were secret 25% partners in Riesen's business: Madison Springfield, Inc. ("MSI"). (Complaint, at ¶¶ 16-25). The Plaintiffs allege that MSI was sold to a third-party in 2022 and, on that basis, they contend they were each entitled to 25% of the sale price. (Complaint, at ¶¶ 45-52).

1

2.    The Plaintiffs admit that their company, International Advisory Services ("IAS"), entered into a Bonus Agreement with MSI on May 10, 2022. (Complaint, at ¶ 43).  According to the Plaintiffs, the purpose of the Bonus Agreement was to pay them "50% of the total cash to be received at closing" from the sale of MSI. (Complaint, at ¶¶ 42-43).  The Plaintiffs acknowledge that Riesen later paid them $2 million pursuant to the terms of the Bonus Agreement on June 7, 2022. (Complaint, at ¶¶ 42-47).

3.    But, alas, here is the rub: According to the Plaintiffs, they have asked Riesen for copies of the actual sale documents in order to confirm that the $2 million they received was, in fact, their true share of the deal. (Complaint, at ¶¶ 47-51).  Riesen, they contend, has deflected and not been fully transparent. (Complaint, at ¶¶ 47-51).  As a result, the Plaintiffs allege, upon information and belief, that Riesen has "misrepresented the actual deal terms," thus depriving them of their "respective 25% shares of the value obtained from the sale of Madison Springfield." (Complaint, at ¶ 56).

4.    But here is the real rub: The Bonus Agreement, which the Plaintiffs conveniently omit from their pleading, contains a general release of claims. Specifically, upon their receipt and acceptance of Riesen's $2 million payment, IAS and its affiliates, i.e. Everington and White, released MSI and its affiliates, i.e.

2

Riesen, from all claims and causes of action involving the sale of MSI. A true and accurate copy of the Bonus Agreement is attached hereto as **Exhibit "A."**[1]

5.      So, in the end, and despite all of the alleged intrigue, the Plaintiffs got what they bargained for: $2 million. For the reasons set forth below, the Court should dismiss the Complaint with prejudice in its entirety.

### ARGUMENT AND MEMORANDUM OF LAW

6.      The Complaint should be dismissed for four reasons. First, and most significantly, through the Bonus Agreement,[2] the Plaintiffs released the claims sued upon in this lawsuit in exchange for a $2 million "bonus," which the Plaintiffs acknowledge they received on or about June 7, 2022.

7.      Second, even if the Plaintiffs were not bound by the terms of their own release, which they are, the Plaintiffs cannot plausibly allege a cause of action for breach of fiduciary duty, as neither Florida nor Texas law recognize a pre-formation fiduciary duty among prospective business partners. As a result, Count IV of the Complaint must be dismissed with prejudice.

---

[1] The identity of the Buyer referenced in the Bonus Agreement has been redacted to preserve confidentiality.

[2] The Bonus Agreement is "governed by and construed in accordance with the laws of the State of Delaware."

8.      Third, under both Florida and Texas law, the imposition of a constructive trust is an equitable remedy --- not a standalone cause of action --- and, as a result, Count II of the Complaint must be dismissed with prejudice.

9.      Finally, and in the alternative, the Complaint is an impermissible "shotgun pleading."  Consequently, even if the Plaintiffs have otherwise pled cognizable causes of action, the Plaintiffs should be ordered to provide a more definite statement that comports their pleading to the Federal Rules of Civil Procedure.

**A.      The Plaintiffs Released Their Claims Against the Defendant and, as a Result, the Complaint Must Be Dismissed With Prejudice in its Entirety.**

10.      Under Delaware law, "[r]eleases are executed to resolve the claims the parties know about as well as those that are unknown or uncertain." *Delpino v. Spinks*, No. N13C-03-288 VLM, 2014 Del. Super. LEXIS 442, at *5 (Super. Ct. Aug. 22, 2014).  "Delaware courts will generally uphold a release and will only set aside a clear and unambiguous release where it was the product of fraud, duress, coercion, or mutual mistake." *Id.*  Releases are contracts, and thus, the legal principles of contract law apply. *Id.*

11.      In interpreting contracts, courts adhere "to the 'objective' theory of contracts." *Schwan's Home Service, Inc. v. Microwave Science, JV, LLC*, C.A. No. 11C-11-008, memo. op. at *10 (Del. Super. Ct. June 24, 2013) (citations omitted).  Under

4

the objective theory, courts consider only the language of the parties' written agreement, asking "what a reasonable person in the position of the parties would have thought [the contract] meant." *Rhone-Poulenc Basic Chemicals Co. v. American Motorists Insurance Co.*, C.A. No. 95-1992, 616 A.2d 1192, 1196 (Del. Nov. 18, 1992) (Veasey, C.J.) (citations omitted).

12.    A court may not consider extrinsic evidence or otherwise resort to canons of construction to discern the meaning of an unambiguous written agreement. *See e.g.*, *Masterson-Carr v. Anesthesia Servs., P.A.*, No. N12C-11-107 MJB, 2014 Del. Super. LEXIS 483, at *26 (Super. Ct. Sep. 25, 2014); *Zimmerman v. Crothall*, No. 6001-VCP, 2012 Del. Ch. LEXIS 64, at *21 (Ch. Mar. 5, 2012) (rejecting a party's argument to apply the "noscitur a sociis" canon because the term "recklessness" was not ambiguous); *Jorgl v. Aim Immunotech*, No. 2022-0669-LWW, 2022 Del. Ch. LEXIS 405, at *24 (Ch. Oct. 28, 2022) (corporate bylaws were not ambiguous and thus the court did not apply canon of construction requiring interpretation in favor of stockholders).  Significantly, a mere disagreement about the meaning of a specified term does not create ambiguity. *See Fox v. Paine*, No. 3187-VCL, 2009 Del. Ch. LEXIS 10, at *18 (Ch. Jan. 22, 2009).

13.    Here, the Plaintiffs acknowledge that their company, IAS, entered into a "Bonus Agreement" with Riesen's company, MSI, under which MSI paid IAS a $2 million "bonus."  *See* (Complaint, at ¶ 43) ("Everington signed the Bonus

5

Agreement on behalf of IAS on May 10, 2022."); (Complaint, at ¶ 47) ("Riesen sent

the $2 million wire [pursuant to the terms of the Bonus Agreement] to IAS on June

7, 2022.").[3]  By accepting the $2 million "bonus," IAS became bound by and subject

to the terms of the Bonus Agreement.   Paragraph 5 of the Bonus Agreement

contains a broad release provision that states as follows:

> Conditioned upon, and effective as of, [IAS's] receipt of
> the Bonus Payment Amount, [IAS], for and on behalf of
> itself and its predecessors, successors, **affiliates**, and
> assigns (collectively, the "Releasors") hereby knowingly,
> fully, unconditionally, completely and irrevocably
> forever releases and discharges Ultimate Parent, Buyer,
> [MSI], and each of their respective current and former
> **affiliates** (together, the "Released Companies"), and
> each of the Released Companies' respective past or
> present officers, directors, stockholders, partners,
> members, subsidiaries, **affiliates**, agents, advisors,
> representatives and employees, and each of their
> respective predecessors, successors, heirs, executors,
> administrators, beneficiaries, legatees and assigns
> (collectively, the "Releasees"), from, and agrees not to
> sue any of the Releasees with respect to, any and all
> claims, actions, causes of action, suits, debts, dues, sums
> of money, accounts, reckonings, covenants, contracts,
> controversies, agreements, promises, variances,
> trespasses, damages, judgments, expenses, executions,
> affirmative defenses, demands and other obligations or
> liabilities whatsoever, in law or equity, whether known
> or unknown, past or present, asserted or unasserted,
> suspected or unsuspected, fixed or contingent, which

---

[3] The Court may consider the Bonus Agreement at this stage of the pleadings. *Regions Bank v. Kaplan*, No. 8:12-CV-1837-T-17MAP, 2014 U.S. Dist. LEXIS 43607, at *7 (M.D. Fla. Mar. 31, 2014) (noting the well-established proposition that the Court may consider "documents central to or referenced in the complaint," regardless of "whether the document is physically attached to the complaint or not.")

> Recipient or any of the Releasors ever had, now have or may ever have against any of the Releasees, in each case to the extent based on, arising out of, or resulting from or relating, directly or indirectly, to the negotiation, execution and delivery of this Agreement or any amounts payable by the Company or its affiliates.

(Bonus Agreement, ¶ 5) (emphasis added).

14.    As emphasized above, effective upon its receipt of the $2 million "bonus" payment, IAS and its affiliates, i.e. Everington and White, released MSI and its affiliates, i.e. Riesen, from any and all claims and causes of action. Significantly, Delaware courts have held --- in the context of release provisions --- that the term "affiliates" includes persons who control or share a close association or connection with the named releasor or releasee. *See, e.g., Geier v. Mozido, Ltd. Liab. Co.*, 2016 Del. Ch. LEXIS 149, at *18 (Ch. Sep. 29, 2016).

15.    On this point, the *Geier* case is particularly instructive.  In *Geier*, the plaintiff sued to exercise options to purchase stock in Mozido LLC.  *Id.* at *2.  Prior to filing suit, the plaintiff caused his trust and another affiliate to loan $3 million to Mozido. *Id.* *4.  Mozido defaulted on the loan, so the trust and affiliate filed suit against Mozido and its guarantors. *Id.* at *5. The loan was eventually repaid by one of the guarantors. *Id.*  Thereafter, Mozido entered into a release agreement with the plaintiff's trust and other affiliated lender. *Id.*  The trust and affiliate were the only named releasors. *Id*.  However, the release also provided that it applied to the releasors' "affiliates, subsidiaries, and parents." *Id.* at *15-16.  Mozido moved to

dismiss the plaintiff's suit, contending that the plaintiff constituted an "affiliate" of the releasor, such that the release barred the plaintiff from enforcing the options. *Id.*

16.     In a thorough and well-reasoned opinion, the trial court granted the motion to dismiss, noting that the term "affiliate" included: "an affiliated person or organization," "being in close connection, allied, associated, or attached as a member of branch," or "someone who controls, is controlled by, or under common control with an issuer of a security." *Id.* at *16-17.  The court rejected the plaintiff's argument that "the term 'affiliate' should not apply to him since he is [an individual or natural person] and not an entity," finding there was "no principled basis to draw that distinction." *Id.* at *17.  As the court succinctly stated: "[i]f the term 'affiliate' would include an entity in control of the Geier Trust or the Geier Group, there is no reason to limit the definition so that an individual in that same position of control would not likewise be deemed an affiliate of the releasors." *Id.* at *17-18.  Alternatively, the court ruled that even if the plaintiff did not "control" the trust or affiliate, he "indisputably had a 'close connection' and 'association' with both entities." *Id.* at *18.  Consequently, the court held that the plaintiff had released his claims against Mozido. *Id.*

17.     While the *Geier* case was admittedly decided under New York law, there is no meaningful distinction between Delaware and New York law

concerning the scope of the term "affiliate." Other Delaware decisions incorporate the same definition of "affiliate" applied by the *Geier* court. *See, e.g. Windsor I, LLC v. CWCapital Asset Mgmt. LLC*, No. N18C-06-115 EMD CCLD, 2019 Del. Super. LEXIS 456, at *10 (Super. Ct. Sep. 27, 2019) (defining an "affiliate" as "'an affiliated person or organization,' 'being close in connection, allied, associated, or attached as a member or branch,' or '[s]omeone who controls, is controlled by, or under common control with an issuer of a security.'"); *see also* Del. Cod. Tit. 8 § 251(c) (defining an "affiliate" as "a person[4] that directly, or indirectly through 1 or more intermediaries, controls, or is controlled by, or is under common control with, another person.").

18.    Here, the Plaintiffs acknowledge that they controlled (or, at minimum, had a close connection or association with) IAS, and that Riesen owned and controlled MSI. *See* (Complaint, at ¶ 14) ("Everington established a company in the United Arab Emirates called International Advisory Services."); (Complaint, at ¶ 17) ("Everington and White agreed that the new venture would be formed separately in the United States as Madison Springfield and that Riesen would formally own 100% of the new venture . . ."). Significantly, just like in the *Geier* case, the release provision applied to the "affiliates" of IAS and MSI. Everington

---

[4] "Person" means **any individual**, corporation, partnership, unincorporated association or other entity. Del Cod. Tit. 8 § 203(6) (emphasis added).

9

and White unquestionably constitute "affiliates" of IAS, as they owned, controlled, and/or shared a close connection or association with IAS. As such, Everington and White both qualify as "Releasors" under the terms of the release provision. By the same token, Riesen clearly constitutes an "affiliate" of MSI, as he owned, controlled, and/or shared a close association or connection with MSI. As a result, Riesen qualifies as a "Releasee" under the terms of the release.[5]

19.    Having established that Everington and White are "Releasors," and Riesen is a "Releasee," the sole remaining question is whether the release applies to the claims asserted in this action. It unquestionably does. The scope of the release provision is extraordinarily broad and all-encompassing. It applies to "any and all claims, actions, causes of action, suits, debts . . . arising out of, or resulting from or relating, directly or indirectly, to the negotiation, execution and delivery of this Agreement or any amounts payable by the Company or its affiliates." (Bonus Agreement, ¶ 5). The Bonus Agreement also contains a merger and integration clause, which "supersedes any and all prior agreements, arrangements and understandings, written or oral, between Recipient and the Company with respect to the subject matter hereof." (Bonus Agreement, at ¶ 6).

---

[5] Given the dispositive nature of this issue, to the extent there is any ambiguity in the Complaint concerning the Plaintiffs' control over or affiliation with IAS, the Defendant requests that the Court treat this motion as a motion for summary judgment in accordance with Federal Rule of Civil Procedure 12(d).

20.    By its express terms, the Bonus Agreement effectuated a full and complete release of all claims and causes of action possessed by IAS and its affiliates, i.e. Everington and White, against MSI and its affiliates, i.e. Riesen, effective upon IAS's receipt of the $2 million bonus.  Here, the Plaintiffs allege that IAS received the "bonus" on or about June 7, 2022, (Complaint, at ¶ 47), while the claims in this action are predicated on verbal and/or written agreements and alleged duties that arose between 2011 and 2016. (Complaint, at ¶¶ 12-25).  As a result, the claims in this action pre-dated the Bonus Agreement and were released effective upon IAS's receipt of the $2 million "bonus."   Consequently, the Plaintiffs' claims must be dismissed, with prejudice, in their entirety.

**B.    The Defendant Did Not Owe the Plaintiffs a Pre-Formation Fiduciary Duty as a Prospective Business Partner and, as a Result, the Plaintiffs' Claim for Breach of Fiduciary Duty Must be Dismissed With Prejudice.**

21.    "Florida's law of partnerships provides that the law of the 'jurisdiction in which a partnership has its chief executive office governs relations among partners and between partners and a partnership.'" *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1202 (11th Cir. 2010) (quoting Fla. Stat. § 620.8106(1)). Here, MSI is a Texas corporation, and thus, Texas partnership law governs the Plaintiffs' claim for breach of fiduciary duty.

22.    "When a partnership exists, the partners owe each other fiduciary duties and are liable for a breach of those duties." *Rainier Southlake DST v.*

11

*Woodbury Strategic Partners Fund, LP*, No. 02-16-00263-CV, 2017 Tex. App. LEXIS 11407, at *8 n.6 (Tex. App. Dec. 7, 2017).  However, ***prior to the formation of a partnership***, prospective partners do not owe each other fiduciary duties in negotiating the terms of a potential partnership arrangement. *Lg&E Cap. Corp. v. Tenaska Vi, L.P.*, 289 F.3d 1059, 1064 (8th Cir. 2002) ("Texas law imposes no pre-formation duties on a prospective partner.").

23.    Moreover, under Texas law, an implied fiduciary duty based on trust and confidence does not exist between parties to an otherwise arms-length business transaction. *See Playboy Enters. v. Editorial Caballero*, S.A. de C.V., 202 S.W.3d 250, 267 (Tex. App. 2006).  Significantly, "[m]ere subjective trust . . . will not serve to transform an arms-length business dealing into a fiduciary relationship." *Bishop v. First Interstate Bank, N.A.*, NO. 14-94-00905-CV, 1996 Tex. App. LEXIS 4109, at *14 (Tex. App. Sep. 12, 1996).

24.    Here, the Plaintiffs allege that they reposed trust and confidence in Riesen "regarding the ***formation*** of the business conceived of by all three that became Madison Springfield." (Complaint, at ¶ 75) (emphasis added).  On that basis, the Plaintiffs allege that Riesen owed them a fiduciary duty. (Complaint, at ¶ 78).  In essence, the Plaintiffs allege that Riesen owed them a pre-formation fiduciary duty given their relationship as prospective business partners.

12

Unfortunately for the Plaintiffs, as set forth above, the law[6] does not recognize a pre-formation fiduciary duty among prospective partners. And, for good reason, as implying a fiduciary duty among parties to a *prospective partnership* would render the fiduciary duty owed by *actual partners* meaningless. Given that Riesen could not have owed the Plaintiffs a pre-formation fiduciary duty as prospective business partners, Count IV must be dismissed with prejudice.

**C.     Constructive Trust Is an Equitable Remedy, Not a Standalone Cause of Action.**

25.     Under Florida and Texas law, a constructive trust is an equitable remedy, not a cause of action. *Swope Rodante, P.A. v. Harmon*, 85 So. 3d 508, 511 (Fla. 2d DCA 2012) (dismissing an action for a constructive trust because it is a remedy and "must be imposed based upon an established cause of action"); *Bauman v. Rayburn*, 878 So. 2d 1273, 1275 n.1 (Fla. 5th DCA 2004) ("'Constructive trust' is not a cause of action per se. Rather, it is an equitable remedy invoked to avoid an unjust enrichment."); *Absolute Activist Value Master Fund Ltd. v. Devine*, No. 2:15-cv-328-FtM-29MRM, 2016 U.S. Dist. LEXIS 52263, at *30 (M.D. Fla. Apr. 19, 2016); *Roach v. Berland*, Civil Action No. 3:13-CV-4640-D, 2014 U.S. Dist. LEXIS 166541, at *6 (N.D. Tex. Dec. 2, 2014); *Sherer v. Sherer*, 393 S.W.3d 480, 491 (Tex.

---

[6] To the extent that Florida law applies to the Plaintiffs' claim, it is in accord with applicable Texas law. *See Taylor Woodrow Homes Fla., Inc. v. 4/46-A Corp.*, 850 So. 2d 536, 538 (Fla. 5th DCA 2003) (failed partnership negotiations constituted an arms-length transaction between competitors and no fiduciary relationship arose).

App. 2013) ("[The] argument presumes that a constructive trust is a cause of action. A constructive trust is a remedy — not a cause of action.").

26. A plaintiff must plead an "established cause of action" that, if proven as true, would justify imposing a constructive trust. *Deangelis v. Strayer Elec., LLC*, No. 16-cv-1482-Orl-37TBS, 2017 U.S. Dist. LEXIS 133687, at *19 (M.D. Fla. Aug. 22, 2017) (granting the defendant summary judgment on the plaintiff's constructive trust claim because it was not, in and of itself, an independent cause of action); *Sherer*, 393 S.W.3d at 491 ("An underlying cause of action such as a breach of fiduciary duty, conversion, or unjust enrichment is required. The constructive trust is merely the remedy used to grant relief on the underlying cause of action."). Here, the Plaintiffs have improperly asserted the equitable remedy of constructive trust as an independent cause of action.  Thus, Count III must be dismissed with prejudice.

**D.     A More Definite Statement Is Required: The Complaint Is a Shotgun Pleading.**

27. A "shotgun pleading" is a complaint, "where each count adopts the allegations of all preceding counts" and it becomes "virtually impossible to know which allegations of fact are intended to support which claims for relief." *Paylor v. Hartford Fire Ins. Co.*, 748 F. 3d 1117, 1126-27 (11th Cir. 2014); *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015) ("The most common type

14

[of shotgun pleading] — by a long shot — is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint."). When served with a shotgun pleading, the defendant should promptly move for a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure. *Weiland*, 792 F.3d at 1321 n.10.

28. Here, the Plaintiffs' Complaint is an impermissible shotgun pleading, as each count adopts the allegations of all preceding counts. (Complaint, ¶¶ 53, 59, 67, 74). Thus, to the extent that dismissal is improper, Riesen seeks a more definite statement from the Plaintiffs so that he may properly assess which allegations are pertinent to each of the Plaintiff's claims.

WHEREFORE, Riesen respectfully requests the Court grant this motion, dismiss the Complaint with prejudice, and grant the parties such additional relief as is just and proper.

DATED: January 29, 2024.

RESPECTFULLY SUBMITTED,

*/s/ Erik Johanson*
Erik Johanson, Esq.
Florida Bar No. 106417
Joseph R. Boyd, Esq.
Florida Bar No. 1039873
ERIK JOHANSON PLLC
3414 W Bay to Bay Blvd
Suite 300

15

Tampa, Florida 33629
(813) 210-9442
erik@johanson.law
jr@johanson.law
ecf@johanson.law
*Counsel for the Defendant*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was served on this 29th day January

2024 via the Court's ECF filing system to the following counsel of record:

Dale R. Sisco
Florida Bar No. 55979
Peter A. Luccarelli
Florida Bar No. 1030952
Cynthia Sonnemann
Florida Bar No. 605581
SISCO-LAW
dsisco@sisco-law.com
pluccarelli@sisco-law.com
Csonnemann@sisco-law.com
777 S. Harbour Island Blvd.,
Suite 320
Tampa, Florida 33602
(813) 224-0555
(813) 221-9736 Facsimile
*Counsel for Plaintiffs*

*/s/ Erik Johanson*
Erik Johanson, Esq.