**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA**

ALEXIS EVERINGTON
and RICHARD WHITE

      Plaintiffs,

v.


TIMOTHY J. RIESEN

      Defendant.

Case No.  8:23-cv-02386-JLB-NHA

---

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS
COMPLAINT, OR ALTERNATIVELY, FOR A MORE DEFINITE
STATEMENT**

Plaintiffs, Alexis Everington and Richard White ("Plaintiffs", "Everington" or "White"), by and through the undersigned counsel pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, file their response to Defendant, Timothy J. Riesen's (the "Defendant" or "Riesen"), motion to dismiss the complaint and respectfully request this Honorable Court to deny Defendant's motion.  In support of their response, the Plaintiffs submit the following memorandum of law.

**INTRODUCTION**

The details set forth in Plaintiffs' complaint need not be repeated at length here. However, a brief overview of the facts is as follows.  Previously, Plaintiffs worked with Defendant on various contracts for the United States government while working for other employers.  The parties became friends and decided to form a company of their

1

own to conduct the same type of contract work. Plaintiffs and Defendant had an oral agreement to form a company that would support public and private organizations seeking insights into foreign markets, competitors, and industry trends.  The company would continue to work with the same types of contracts the parties have done before, notably in the United States government military intelligence, and defense sectors. Defendant represented to Plaintiffs that it would not be possible for Plaintiffs to be owners of a United States company due to the highly sensitive nature of the work and Plaintiffs not being citizens of the United States.  Defendant and Plaintiffs further agreed the Operational Security (OPSEC) requirements of the sensitive work undertaken made it wise for Plaintiffs to not be openly identified as working with the company.  Due to the secrecy and dangerous conditions in obtaining sensitive information in foreign countries, it was sensible that Everington and White remain secret partners with Defendant.

Defendant formed Madison Springfield, Inc. ("Madison Springfield") in Texas. Defendant was the sole shareholder.  The understanding between Defendant and Plaintiffs was that they were partners in developing Madison Springfield into a successful business.  It was beneficial to Defendant to work as a partnership with Plaintiffs due to their unique skill set and expertise in this area of contract work including their contacts in foreign countries.  The parties continued to work for years as partners in obtaining various contracts until the acquisition of Madison Springfield.

International Advisory Services ("IAS") was formed in the United Arab Emirates.  IAS is owned by Everington's sister.  Everington and White are not

shareholders in the company.  Prior to forming Madison Springfield, Defendant did not want to join IAS.  Defendant represented to Plaintiffs that a United States company would need to be formed to obtain the highly classified contracts sought from the United States government and defense sector.  Consequently, Defendant formed Madison Springfield.  IAS therefore was the vehicle in which Madison Springfield made payments for work performed by Everington and White for the benefit of Madison Springfield.  At all times, the parties worked together to build Madison Springfield into a successful enterprise as reflected by the frequent conversations between the parties regarding projects and the eventual sale of Madison Springfield.

On two separate occasions, Plaintiffs and Defendant memorialized their oral agreement for Plaintiffs to share in Madison Springfield's profits through stock option agreements.  These agreements are titled "Incentive Stock Option Agreement."  *See* Exs. B, C, D, E.  In 2013, Everington and White were each individually given an option to purchase ten percent of Madison Springfield's common stock in the event of a sale or merger. *See* Exs. B, C.  Later, on November 21, 2016, Everington's, and White's ability to purchase the company's common stock was increased from ten percent to twenty-five percent.  *See* Exs. D, E.  Therefore, Everington and White were rightful owners to fifty percent of Madison Springfield's common stock upon the company's sale or merger. The stock options were to be exercised when the company was sold or acquired.  Plaintiffs continued to work with Defendant in building Madison Springfield into a profitable company with lucrative government contracts.

At some point in 2022, Madison Springfield was acquired by a third party.

3

Contrary to the stock option agreements, Defendant never gave Plaintiffs a formal notice of the sale of Madison Springfield.  Defendant did not disclose to Plaintiffs the sale's terms. Defendant continually kept Plaintiffs in the dark about the acquisition of Madison Springfield.  Defendant also never gave Plaintiffs their right to exercise their stock options to each acquire twenty-five percent of Madison Springfield's common stock before the sale closed.  Instead, Defendant kept all the common shares of stock and profits to himself during the company's acquisition.

IAS on or about May 10, 2022, signed a Bonus Agreement with Madison Springfield.  Later in June 2022, pursuant to the Bonus Agreement, two million dollars was wired to IAS.  The Bonus Agreement was separate and apart from the stock option agreements given to Everington and White individually.  The Bonus Agreement was between Madison Springfield and IAS.  Everington signed the Bonus Agreement on behalf of IAS as Director of Operations.  *See* Ex. A.  White did not sign the Bonus Agreement.  Importantly, Plaintiffs were not given the option to exercise their stock options during the acquisition of Madison Springfield.  To date, Plaintiffs have not seen the merger documents pertaining to the acquisition despite repeated requests to Defendant.

## II.  ARGUMENT AND MEMORANDUM OF LAW

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a Court is "limited to the four corners of the complaint." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002); *Wilchombe v. Teevee Toons, Inc.*, 555 F.3d 949, 958 (11th Cir. 2009) (same).  A court "accept[s] the factual allegations in the complaint as true and

4

construe[s] them in the light most favorable to the plaintiff." *Echols v. Lawton*, 913 F.3d 1313, 1318 (11th Cir. 2019). Therefore, a complaint must set forth well-pled facts that are more than mere conclusions or a recitation of the elements of a cause of action. *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir. 2008).

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation and quotations omitted); *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (explaining "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."). Plaintiffs' well-pled complaint sets forth valid causes of action and Defendant's motion is due to be denied.

### A. The Bonus Agreement was a separate agreement from the stock option agreements provided to Everington and White.

The Bonus Agreement provides that the governing law is the state of Delaware. *See* Ex. A, ¶ 7. Delaware courts follow the rule that "[c]lear and unambiguous language in [a contract] should be given its ordinary and usual meaning." *Rhone-Poulenc Basic Chemicals Co. v. American Motorist Ins. Co.* 616 A.2d 1192, 1195 (Del. 1992). A "contract's construction should be that which would be understood by an objective, reasonable third party." *Osborn ex. rel. Osborn v. Kemp*, 991 A.2d 1153,1159 (Del. 2010) (internal citation and quotations omitted). Therefore, a court when

5

determining the parties' intent will examine "the parties' words and the plain meaning of those words where no special meaning is intended." *Lorillard Tobacco Co. v. American Legacy Foundation*, 903 A.2 728, 739 (Del. 2006). "Absent some ambiguity, Delaware courts will not destroy or twist policy language under the guise of construing it." *Id.*

The plain words of the Bonus Agreement state that "[t]his Bonus Agreement … is made as of [ ], 2022, between Madison Springfield Inc., a Texas corporation (the "Company"), and International Advisory Services, an United Arab Emirates entity ("Recipient")." *See* Ex. A. The clear and unambiguous contract language states that the agreement is between Madison Springfield and IAS. *See Osborn ex. rel. Osborn v. Kemp*, 991 A.2d at 1159-60 (stating that the court gives "effect to the plain-meaning of the contract's terms and provisions" when the "contract is clear and unambiguous."). The Bonus Agreement contains no language specifically identifying that it is between Madison Springfield and Everington or White. Rather, the Bonus Agreement only names Madison Springfield and IAS as the parties to the agreement.

Contrary to Defendant's position, any "release" contained in the agreement applied to IAS solely. Defendant's attempt to read further language into the release language contained in the Bonus Agreement would cause the court to "destroy or twist [contract] language under the guise of construing it." *Lorillard Tobacco Co. v. American Legacy Foundation*, 903 A.2 at 739. As indicated, Plaintiffs are not shareholders in the company. Notably, White did not sign the Bonus Agreement. Accordingly, the release language is not applicable to Everington and White individually. In any event, if the release language is made applicable to Everington and White, it would destroy

6

the parties' intent in Plaintiffs obtaining their fair share in the sale of Madison Springfield.

In this respect, to allow Defendant to block Everington and White from exercising their stock options without any ramifications, would prevent Plaintiffs from "receiving the fruits of the bargain." *Dunlap v. State Farm Fire and Casualty Co.*, 878 A.2d 434, 442 (Del. 2005) (internal quotations omitted).  In other words, the fruits of Plaintiffs' unique skill set and work in developing Madison Springfield would be extinguished.  Thus, Delaware courts recognize that "the implied covenant [of good faith] attaches to every contract."  *Id.*  The implied covenant of good faith prevents Defendant from acting arbitrary and unreasonable in the prevention of Plaintiffs exercising their stock option rights. *Id.*

Moreover, the plain language of the stock option agreements set forth the terms between Madison Springfield and Plaintiffs individually. *See* Exs. B, C, D, E. Everington and White each had two stock option agreements with Madison Springfield. *See* Exs. B, C, D, E.  As indicated, upon the sale or merger of Madison Springfield, both Plaintiffs each had stock options to purchase ten percent of the company's common stock.  Later their stock options were increased to each being able to purchase and sell twenty-five percent of the company's common stock.  *See Exs.* D, E.  Everington and White therefore were entitled to fifty percent of the company's common stock.

The stock option agreements are governed by Texas Law.  *See Exs.* B, C, D, E. Under Texas law, the elements of a breach of contract claim are "(1) the existence of

a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained as a result of the breach." *B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App. 2009); *See also Nguyen v. Hoang*, 507 S.W.3d 360, 378 (Tex. App. 2016) (upholding a jury's finding on the damages award regarding an oral partnership agreement pertaining to ownership of a business).  A court "examine[s] the entire agreement in an effort to harmonize and give effect to all provisions of the contract so that none will be meaningless."  *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999).  A contract's terms are given "their plain, ordinary, and generally accepted meaning unless the contract shows the parties used them in a technical or different sense."  *Texas Ear Nose & Throat Consultants, PLLC v. Jones*, 470 S.W.3d 67, 76 (Tex. App. 2015).  A breach of a contract occurs "when a party fails or refuses to do something he has promised to do."  *Mays v. Pierce*, 203 S.W.3d 564, 575 (Tex. App. 2006); *B & W Supply, Inc. v. Beckman*, 305 S.W.3d at 16.

Here, Plaintiffs had valid stock option agreements in place, Defendant breached those agreements in not permitting them to exercise those options, and Plaintiffs suffered damages in a loss of a stock option sale. *B & W Supply, Inc. v. Beckman*, 305 S.W.3d at 16; *See Miga v. Jensen*, 96 S.W.3d 207, 211 (Tex. 2003) (explaining a party prevented from exercising a stock option is "a classic breach of contract case."). Plaintiffs' damages equal the value of the company's stock at the time Madison Springfield was acquired. *See Miga v. Jensen*, 96 S.W.3d at 214-215 (explaining that the

8

amount of damages of a stock option contract is the value of the stock at the time of the breach). However, Plaintiffs do not know the value of their shares of stock because Defendant has not been forthright about the company's sale price despite repeated requests from the Plaintiffs.

Accordingly, the Bonus Agreement between Madison Springfield and IAS had no bearing on Plaintiffs' stock option agreements. Plaintiffs have alleged facts demonstrating agreements were in place and Defendant breached those agreements by not permitting Plaintiffs to exercise their stock option agreements. Therefore, Defendant's motion to dismiss Plaintiffs' complaint is due to be denied.

**B. Defendant breached a fiduciary duty based on a business partnership with Plaintiffs.**

Florida Statute § 620.8106(1) provides that "the law of the jurisdiction in which a partnership has its chief executive office governs relations among partners and between the partners and a partnership." *See LeBlanc v. Unifund CCR Partners*, *ZB*, 601 F.3d 1185, 1202 (11th Cir. 2010) (applying the Florida statute in determining Ohio law governed general partner liability). Here, Madison Springfield is a Texas corporation. Texas law therefore applies to the breach of fiduciary claim regarding the partnership.

A claim for a breach a fiduciary duty under Texas law includes "(1) a fiduciary relationship between the plaintiff and defendant, (2) a breach by the defendant of his fiduciary duty to the plaintiff, and (3) an injury to the plaintiff or benefit to the defendant as a result of the defendant's breach." *Lindley v. McNight*, 349 S.W.3d 113,

9

124 (Tex. App. 2011). Under Texas law, partners owe a fiduciary duty to one another in conducting business. *M.R. Champion, Inc. v. Mizell*, 904 S.W.2d 617, 618 (Tex. 1995). "When a partnership exists, the partners owe each other fiduciary duties and are liable for a breach of those duties." *Rainier Southlake DST. v. Woodbury Strategic Partners Fund, LP,* 2017 WL 6047725 *12 n.6 (Tex. App. Dec. 7, 2017).

In determining whether a partnership exists, a court must look to the totality of circumstances including the five factors set forth in the Texas Revised Partnership Act. *Ingram v. Deere,* 288 S.W.3d 886, 895-98 (Tex. 2009); *Garcia v. Lucero*, 366 S.W.3d 275, 277 (Tex. App. 2012); *See* TEX. BUS. ORGS. CODE § 152.051(a) (listing the five factors of creation of a partnership as: "(1) receipt or right to receive share of profits of the business; (2) expression of an intent to be partners in the business; (3) participation or right to participate in control of the business; (4) agreement to share or sharing (A) losses of the business; or (B) liability for claims…against the business; [and] (5) agreement to contribute or contributing money or property to the business."). Importantly, a written partnership agreement is not indicative of the existence of a partnership. *See Nguyen v. Hoang*, 507 S.W.3d at 375 (determining that evidence supported finding that despite no written agreement, the continuum of factors established a partnership among family members); *See also Sewing v. Bowman*, 371 S.W.3d 321, 336 (Tex. App. 2012) (upholding the jury's determination that sufficient evidence supported the existence of an oral partnership agreement). Rather, the existence of a partnership is based on the continuum of the factors to be considered. *Ingram v. Deere,* 288 S.W. at 898. Therefore, a court considers the totality of

circumstances, including the "partners' speech, writings, and conduct" and whether the "parties expressed their intent to be partners." *Nguyen v. Hoang*, 507 S.W.3d at 372 (internal citation and quotations omitted).

Contrary to Defendant's position, the parties were not prospective business partners in forming Madison Springfield (Doc. 17, p. 12). Further, the parties also did not conduct business at an arms-length (*Id.*). Instead, the parties for many years were close business partners and friends in the formation and workings of Madison Springfield. Defendant continually expressed his statements in texts and other communications that the parties were partners. Everington and White played an integral role in the company with their unique skill set and foreign connections. They worked closely with Defendant in developing a flourishing company that became a successful enterprise in obtaining and securing highly classified contracts in foreign countries. Consequently, due to Everington's and White's hard partnership work, their stock option shares were increased to twenty-five percent.

As a business partner, Defendant owed a duty of honesty and fair dealing with Everington and White in conducting business. *See* TEX. BUS. ORGS. CODE § 152.204 (listing that a partner owes a duty of loyalty and care to the other partners). Therefore, Defendant is accountable to Everington and White from blocking them in exercising their rightful stock options with Madison Springfield during its acquisition. *See M.R. Champion, Inc. v. Mizell*, 904 S.W.2d at 618 (Tex. 1995) (explaining partners owe each other a duty in conducting business); *Nguyen v. Hoang*, 507 S.W.3d at 380 (holding that evidence supported a jury's award in finding a partner breached his

11

partnership duties by withholding profits); TEX. BUS. ORGS. CODE § 152.205(1) (stating that "[a] partner's duty of loyalty includes: accounting to and holding for the partnership property, profit, or benefit derived by the partner … in the conduct and winding up of the partnership business…").  Accordingly, Defendant "may not place himself in a position where it benefits him to violate" his partnership duty.  *Nguyen v. Hoang*, 507 S.W.3d at 379; *See Welder v. Green*, 985 S.W.2d 170, 175 (Tex. App. 1998) (stating "[t]he misappropriation by one partner for his own use the property of the partnership is constructive fraud"); *Maykus v. First City Realty and Fin. Corp.*, 518 S.W.2d 887, 892 (Tex. Civ. App. 1975) (explaining that "[p]artners and joint venturers have obligations of loyalty to the common enterprise and of utmost good faith, fairness, and honesty in their dealings with each other in respect to [a] enterprise, and especially does the party entrusted with conduct of the enterprise have such obligations).  Defendant, however, being entrusted with running Madison Springfield violated his partnership duty to Plaintiffs by withholding the company's stock to benefit himself during its acquisition.  *See Welder v. Green*, 985 S.W.2d at 175 (explaining "[a] partner is prohibited from using the advantage of his position to gain any benefit for himself at the expense of his partners and from placing himself in any position where his self-interest may conflict with his obligations").  Consequently, as the managing partner of Madison Springfield, Defendant breached his duty to Plaintiffs by withholding money owed to Plaintiffs from the acquisition of Madison Springfield.  *Id.* (stating "[m]anaging partners owe their partners the highest fiduciary duty recognized by law.").  Here, Plaintiffs have alleged sufficient facts that a

partnership existed, and Plaintiffs were not given their fair of profits during the acquisition of Madison Springfield.  Accordingly, Defendant's motion to dismiss should be denied.

### C. Constructive Trust

A constructive trust is an equitable remedy.  *McGee v. Cook*, 2011 WL 13143441 *4 (M.D. Fla. 2011).  Plaintiffs agree that a constructive trust is not a separate cause of action.  However, Plaintiffs submit that a constructive trust is an appropriate remedy in this case due to Defendant's unjust enrichment in retaining the stocks of Madison Springfield.  Therefore, a constructive trust is created "'by equity to prevent an unjust enrichment of one person at the expense of another as a result of fraud, undue influence, abuse of confidence or mistake in the transaction that originates the problem.'"  *See Joseph v. Chanin*, 940 So.2d 483, 487 (Fla. 4th DCA 2006) (citing *Wadlington v. Edwards*, 92 So.2d 629, 631 (Fla. 1957).  It is unknown at this stage of the case whether Defendant retained the value of Plaintiffs' stocks or whether he transferred the money into another trust or entity.  Therefore, a constructive trust is an appropriate remedy in this case.

### D.  Plaintiffs' Complaint is not a shot gun pleading.

"Shotgun pleadings violate Rule 8, which requires 'a short and plain statement of the claim showing that the pleader is entitled to relief,' Fed. R. Civ. P. 8(a)(2), by 'fail[ing] to one degree or another … to give the defendant[] adequate notice of the

claims against [him] and the grounds upon which each claim rests.'" *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294-95 (11th Cir. 2018) (citing *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). Plaintiffs' complaint sets forth each cause of action in short and plain statements putting Defendant on notice of the claims being asserted against him. Thus, each cause of action contains plain statements that set forth allegations supporting each of Plaintiffs' claims. Therefore, Plaintiffs' complaint should not be dismissed, and a more definite statement is not required.

WHEREFORE, Plaintiffs respectfully request the Court deny Defendant's motion to dismiss the complaint.

Respectfully Submitted,

SISCO-LAW

  /s/ Cynthia C. Sonnemann
Dale R. Sisco
dsisco@sisco-law.com
Florida Bar No. 559679
Peter A. Luccarelli, III
pluccarelli@sisco-law.com
Florida Bar No. 1030952
Cynthia C. Sonnemann
csonnemann@sisco-law.com
Florida Bar No. 605581
777 S. Harbour Island Blvd.
Suite 320
Tampa, FL  33602
(813) 224-0555
(813) 221-9736 Facsimile
*Counsel for the Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 13, 2024, a true and correct copy of the foregoing has been furnished via mail or filed electronically via CM/ECF to all counsel of record and to the following parties:

Erik Johanson, Esq.
Florida Bar No. 106417
Joseph R. Boyd, Esq.
Florida Bar No. 1039873
ERIK JOHANSON PLLC
3414 W Bay to Bay Blvd
Suite 300
Tampa, Florida 33629
(813) 210-9442
erik@johanson.law
jr@johanson.law
ecf@johanson.law
*Counsel for the Defendant*

   /s/ Cynthia C. Sonnemann   
Attorney

15