## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| ALEXIS EVERINGTON and RICHARD WHITE | Case No.  8:23-cv-02386-JLB-NHA |
| Plaintiffs, | |
| v. | |
| TIMOTHY J. RIESEN | |
| Defendant. | |

### AMENDED COMPLAINT

Plaintiffs Alexis Everington and Richard White allege in support of their Amended Complaint against Timothy J. Riesen as follows:

### INTRODUCTION

1.      After leaving their respective employers, Timothy J. Riesen ("Riesen"), Alexis Everington ("Everington"), and Richard White ("White"), who worked together for years in other ventures, agreed to start a business supporting public and private organizations seeking insights on foreign markets, competitors, and industry trends.  However, Riesen maintained that it would not be possible for Everington and White, given that they there were not citizens of the United States, to be owners of a business securing and implementing work of the sensitive nature that they had previously worked on for the United States government. In addition, the Operational Security (OPSEC) requirements of the sensitive work undertaken also made it wise for Everington and White not to be openly identified as working with Madison Springfield

1

Inc. ("MSI" or "Madison Springfield"). Everington and White agreed with the latter and knew no better regarding the former. As such, Riesen established himself as the sole owner of Madison Springfield.

2.      Everington and White had an oral agreement with Riesen to work as partners to form and develop MSI into a successful business with the agreed upon vision that MSI would be sold at a profit in the future with the three men sharing in the proceeds.

3.      Everington and White therefore agreed with Riesen to continually promote MSI's work and name in the marketplace.  Everington and White would also use their unique skill set and invaluable contacts in foreign markets to develop MSI into a profitable company.

4.      In order to ensure that Everington and White could benefit from the arrangement while supposedly preserving the competitiveness of MSI and the security of the work undertaken, Riesen agreed to provide Everington and White with stock options in MSI, allowing each to monetize their efforts for the newly formed company in the event of a sale.

5.      Riesen, White, and Everington memorialized their arrangement in 2013 and again in 2016 when White and Everington each received stock options equaling 25% of the outstanding shares of Madison Springfield.

6.      Based  on  Riesen's  promises,  White  and  Everington  worked cooperatively with Riesen for years building Madison Springfield into a valuable

enterprise with lucrative government contracts.  At all times, White and Everington believed Riesen would honor his commitments to them.

7.    In 2022, after a period of negotiations, Riesen agreed to sell Madison Springfield to a third party. Riesen failed to give White and Everington formal notice of the sale, failed to disclose the deal terms, and never gave White and Everington an opportunity to exercise their options to each acquire 25% of Madison Springfield's stock before the sale closed as required by their stock option agreements.

8.    When confronted by White and Everington about the sale, Riesen has repeatedly refused to transparently disclose the terms of the sale.  Instead, Riesen sought to buy off White and Everington at a substantial discount and promised to make future payments but will not reduce those promises to any enforceable terms. As such, White and Everington have no choice but to commence this action to recover what is rightfully theirs: half the proceeds from the sale of Madison Springfield.

## JURISDICTION

9.    The Court has jurisdiction over this action under 28 U.S.C. § 1332(a)(2) in that the amount in controversy in this matter exceeds $75,000.00 and this is a civil action between a citizen of the State of Florida and citizens of the United Kingdom and Monaco who are not permanent residents of the United States nor domiciled in the State of Florida.

## VENUE

10.     Venue is proper in this district under 28 U.S.C. § 1391(b)(1), in that Defendant Riesen resides in this District.

## PARTIES

11.     Plaintiff Richard White is an individual who resides in the United Kingdom and is a citizen of the United Kingdom.

12.     Plaintiff Alexis Everington is an individual who resides in Monaco and is a citizen of the United Kingdom

13.     Defendant Timothy J. Riesen is an individual who resides in Sarasota, Florida, and is a citizen of the State of Florida.

## FACTS

14.     Prior to 2011, Riesen and Everington began working together on projects while they were employed at separate companies operating in the United States defense sector.

15.     In 2011, Everington left his employer. White remained to finish a number of legacy projects with Riesen.

16.      After leaving, Everington and Riesen discussed establishing a new company as Riesen also believed (correctly) that work at his employer would draw to an end. Everington established a company in the United Arab Emirates called International Advisory Services ("IAS").

17.     The new business would seek to do the same type of contracts with the same types of clients (notably the U.S. government defense sector).

18.     Riesen advocated against joining IAS, representing that if the new venture was to successfully compete for government contracts in the United States the entity through which the work would be done needed to be formed in the United States. Riesen also raised concerns about the formal ownership structure of the new venture including individuals who were not United States citizens. As Riesen explained, the United States government would find foreign firm ownership disqualifying for the type of government contracts the new entity would seek to win.

19.     Trusting Riesen's representations about the viability of obtaining United States government contracts through a foreign firm, Everington and White agreed that the new venture would be formed separately in the United States as MSI and that Riesen would formally own 100% of the new venture but that some other way of compensating the two other partners could be found.

20.     After the formation of MSI Everington, Riesen, and White worked cooperatively to build up Madison Springfield operating as partners would in a partnership.

21.     White and Everington would attend meetings as representatives of Madison Springfield, provide job training to MSI employees, carry business cards identifying them as principals of MSI, use MSI emails, discuss all work opportunities with Riesen, provide Riesen advice on contracts and would generally do whatever was necessary for MSI to meet its contractual obligations with its customers.

22.     Riesen would confide in Plaintiffs about the intimate details of the workings of MSI including the status of negotiations during the bids for new contracts.

Riesen would also discuss with Plaintiffs and would receive advice about the feasibility and costs of various contracts for MSI.

23.    Everington and White are well-known in the foreign markets, have various foreign contacts, and are knowledgeable about various foreign markets that made it possible for MSI to compete for various contracts that were sensitive in nature.

24.    Riesen would have been unable to develop MSI's business and complete various contracts for its customers had it not been for his partnership with Plaintiffs due to their unique skill set and expertise.

25.    In essence, while Riesen was the face of Madison Springfield to existing and potential customers, Plaintiffs were the backbone of the company.

26.    IAS therefore was the vehicle in which Plaintiffs were to be paid for their work performed for MSI's contracts.  Everington became the director of International Advisory Services.  White provided independent contract work for International Advisory Services.  White has no control over IAS.

27.    White and Everington would carry out the contracts MSI was awarded through IAS. This had the added perceived benefit of protecting the operational security of MSI projects, particularly when some of these became of an increasingly sensitive nature.  Further, White and Everington believed Riesen that this was the mechanism in which they had to take in order to compete and complete contracts sensitive in nature in the United States defense sector.  Plaintiffs, therefore, held the belief that they were partners with Riesen.

28.     To partially formalize the understanding Riesen, White, and Everington had reached prior to MSI's formation, White and Everington each received stock options in Madison Springfield in 2013 that gave them each an option to purchase 10% of its stock at a change in control event for the Company ("2013 Stock Option Agreement").

29.     The 2013 Stock Option Agreement obligated MSI (and effectively Riesen as its sole owner) to notify White and Everington of a change in control event so that they could exercise their stock options.

30.     White and Everington were disappointed at the percent allocation of stock options to them in 2013.

31.     White and Everington pushed Riesen to increase the percent of stock options allocated to them to conform to the pre-formation agreement.

32.     Riesen acquiesced in 2016 causing Madison Springfield to restate the stock option award to White and Everington to increase their options to 25% each of the company's stock ("the 2016 Stock Option Agreement").

33.     The stock options signified the invaluable benefits and expertise Plaintiffs brought to developing MSI into a successful enterprise.  The Stock Option Agreements named Plaintiffs as employees of MSI.

34.     Satisfied with Riesen having purportedly followed through to memorialize the terms of the pre-formation agreement to work as partners, White and Everington continued to devote their time, talent, and efforts to maximizing the value of MSI with the understanding they would receive half of the sale profits in the future.

35.     Consequently, during Madison Springfield's development, Everington and White held themselves out as partners of MSI and continued to promote MSI's name in the industry.  In other words, Plaintiffs promoted MSI as the company performing the contracts sensitive in nature rather than IAS.

36.     Plaintiffs dedicated numerous hours and years as partners with Riesen in developing MSI into a lucrative enterprise with many of those hours being uncompensated.

37.     Riesen also listed Everington as Director of Research and White as Director of Analysis in MSI's company materials.

38.     Due to Plaintiffs' hard work and expertise, MSI obtained numerous and lucrative government contracts that were sensitive in nature.  Those contracts were performed and completed by Plaintiffs.

39.     Plaintiffs and Riesen continued with their oral agreement to work in developing Madison Springfield into a lucrative business to sell the company for a sizable profit in which they would all share in the proceeds.

40.     In November 2020, Riesen then informed White and Everington that he wanted to sell MSI.

41.     Riesen represented that MSI was well positioned to capture a sale figure of $40-$50 million.

42.     During this conversation, Riesen reiterated the agreement they previously reached and acknowledged the critical role White and Everington played

in growing the company. In other words, MSI's success was due to the partnership and hard work among the three men.

43.    Riesen relayed he would engage an investment banker to help facilitate a sale.

44.    Following this November 2020 conversation, Riesen kept White and Everington largely in the dark, providing only generic background information on the sale possibility.  However, Plaintiffs continued to place trust in Riesen and that he would honor their partnership and the stock option agreements.

45.    By late December 2020, Riesen informed Everington that MSI formally engaged an investment banker to market the sale.

46.    During the winter and early spring of 2021, Riesen relayed generally to Everington and White that there were many interested buyers of the company.

47.    Around this time, Riesen made a decision not to distribute excess cash received on a project to IAS to make Madison Springfield look more valuable to prospective purchasers.

48.    When confronted about this decision by Everington, Riesen explained a higher sale price would benefit Everington and White given their stakes in the company.

49.    By May of 2021, Riesen was starting to downplay the likely sale number to Everington and White suggesting the sale price would range from $10 to $25 million.

50.     Riesen continued downplaying the likely sale number through June 2021 in his generic communications with Everington and White blaming poor twelve-month financials for the offers coming in so much lower than the original estimated sale price.

51.     In late 2021 and early 2022, Riesen relayed another prospective purchaser was actively exploring whether to acquire Madison Springfield.

52.     In late February, Riesen informed Everington in broad terms of the offer from the new prospective purchaser.  Riesen admitted that at that purported sale number White and Everington were each due $3 million.

53.     Riesen kept Everington and White generally up to date as the prospective deal worked through various stages of activity.  However, Riesen never provided Everington and White with any negotiated terms of the sale company.  Plaintiffs therefore continued to rely on Riesen's representations concerning the prospective sale.

54.     By May, the deal had reached a point where acquisition documents were being drafted such that Riesen persuaded Everington to have IAS sign a Bonus Agreement.  The Bonus Agreement was a mechanism in which White and Everington were to each receive $1 million when the transaction closed.  Riesen signed the agreement as Chief Executive Officer of MSI.

55.     The Bonus Agreement was between MSI and IAS.  Everington signed the Bonus Agreement as a director on behalf of IAS on May 10, 2022.

56.    Riesen also represented that he would pay Plaintiffs through IAS an additional $4 million when it was feasible to do so.  Apparently, this was Riesen's attempt to quell the Plaintiffs' inquiries regarding the actual monies earned by Riesen upon the merger.

57.    Up until this point, Riesen had not shared the sale or merger agreements with Everington and White.

58.    Riesen relayed during the rest of May that the transaction would close as soon as the merger documents were approved and accepted by the State of Texas and that funds would be released shortly thereafter.  The expected approval date was May 31, 2022.

59.    On June 3, 2022, Riesen informed Everington and White that Riesen would wire the $2 million and not the acquiring entity.

60.    Everington found that odd, especially as Everington and White were entitled to acquire 50% of the equity in MSI ahead of the merger and participate in the transaction directly under the terms of the 2016 Stock Option Agreements and started pushing to see the actual merger documents.  Riesen continued to keep secret the terms of the merger.

61.    Riesen sent the $2 million wire to IAS on June 7, 2022.  But he refused to send the actual merger agreement because of a purported non-disclosure agreement. Riesen continued to keep Plaintiffs in the dark about the actual amount received for the merger of MSI.

62.    None of the parties were under the assumption that the Bonus Agreement would extinguish Plaintiffs' rights in receiving at a minimum the additional $4 million Riesen promised to pay after the merger of MSI.

63.    White and Everington repeatedly pushed for transparency on the deal terms.

64.    Riesen continued to provide a generic description of the deal terms but would not disclose the underlying transaction documents.  Riesen then provided empty promises to show Plaintiffs the transaction documents, but he never kept his promises.

65.    Riesen then required Everington to sign a non-disclosure agreement to receive another generic summary of the transaction from his lawyer.  Riesen's lawyer provided the generic summary in July 2022.

66.    Despite Everington having signed the non-disclosure agreement, Riesen continued to refuse the repeated requests from Everington and White to see the merger documents.

67.    Later in September 2022, Riesen's lawyer sent Plaintiffs another generic summary of the transaction.  Notably, the letter indicated that Riesen agreed to pay Plaintiffs an additional $4 million.

68.    Upon information and belief, Riesen has misrepresented the actual deal terms and deprived White and Everington of what they are entitled to: the respective 25% shares of the value obtained from the sale of Madison Springfield.  Consequently,

Plaintiffs' receipt of $2 million was not a representative share of the amount owed to them due to the company's merger.

69.    To date, at a minimum, Riesen has failed to pay Plaintiffs the $4 million he promised to pay them.  Upon information and belief, Riesen has hid the actual sale terms of the merger of MSI, resulting in Plaintiffs being owed a far greater amount than $4 million.

## COUNT I – BREACH OF FIDUCIARY DUTY

70.    White and Everington reposed in Riesen, and Riesen knowingly accepted, Plaintiffs' trust and confidence regarding the formation of the business conceived by all three that became MSI.

71.    White and Everington relied on Riesen to act in their best interests, vis-á-vis their oral agreement to share in the proceeds generated from any sale of MSI, the business that all three created and built.

72.    White and Everington worked alongside Riesen as partners with the understanding of building MSI into a successful business enterprise.

73.    The three men had an agreement that after MSI became a lucrative business, they would sell the company for a substantial profit and all three would share in the sale proceeds.

74.    Riesen manipulated Plaintiffs' trust and reliance for his own personal gain.  Riesen continually hid the company's sales terms from Plaintiffs.

75.     Riesen's actions, in depriving White and Everington of the full benefits of the MSI sale, constitute a course of conduct designed to harm White and Everington.

76.     Riesen's actions in this regard constitute a breach of fiduciary duty.

77.     Riesen's actions described herein have at all times relevant been willful and/or knowing.

78.     As a direct and proximate result of the actions of Riesen alleged herein, White and Everington have suffered damages.

79.     By reason of the foregoing, Defendant Riesen is liable to Plaintiffs for compensatory damages in an amount in excess of $75,000.00 as well as punitive damages.

## COUNT II - BREACH OF AGREEMENTS

80.     Riesen, Everington and White had an oral agreement to work together as partners in the formation and building of MSI into a lucrative business with the end goal of selling the business for a profitable margin.

81.     Riesen, Everington, and White agreed to share in the proceeds of the sale or merger of MSI.  Therefore, Everington and Riesen were each to receive 25% of the value derived from any sale or merger of MSI.

82.     Riesen memorialized this oral understanding through various communications including emails and text messages exchanged with Everington and White.

83.    Riesen received a benefit under the contract namely, Plaintiffs' expertise, unique skill set, contacts and work that developed MSI into a profitable business.

84.    Under Texas law, oral agreements are valid and enforceable.

85.    Riesen breached this agreement by solely conducting the sale of MSI and hiding the terms of the sale from Plaintiffs.  Riesen prevented Everington and White from participating in the transaction, and ultimately receiving their respective shares of the profits from the sale proceeds.

86.    At no time did Plaintiffs consider the Bonus Agreement to extinguish their rights to receive additional money that was owed to them for their work and development of MSI.

87.    Alternatively, Plaintiffs may be considered employees of MSI. Riesen also provided Plaintiffs with Stock Option Agreements in which Everington and White would each derive 25% of the value of the sale of MSI.

88.    Those agreements named Plaintiffs as employees in 2013 and 2016. Thus, as renumeration for their invaluable experience and extensive work in building MSI into a successful business, Riesen executed the Stock Option Agreements on behalf of MSI.

89.    Texas Labor Code Section 401.012(a) provides that an "employee means each person in the service of another under a contract of hire, whether express or implied, or oral or written."  Therefore, Plaintiffs' employment did not have to be memorialized in a written agreement to be recognized.

90.     Texas Labor Code Section 401.011(11) defines "compensation" as a "payment of a benefit."

91.     Riesen owed Plaintiffs compensation under the Stock Option Agreements for their work performed.

92.     Riesen failed to compensate Everington and Riesen under the Stock Option Agreements by preventing them from exercising their options under the agreements during the merger of MSI.   Consequently, Riesen breached the employment agreement with Plaintiffs and in turn also breached the Stock Option Agreements by failing to pay Plaintiffs each 25% of the value derived from the sale.

93.     Riesen therefore breached: his oral agreement with Plaintiffs to develop MSI as partners and share in the company's sale profits, his employment agreement with Plaintiffs, and the Stock Option Agreements.

94.     Consequently, Plaintiffs are entitled either to specific performance of the contracts or to damages.

95.     Riesen should be ordered to perform and permit Plaintiffs to exercise their stock options or pay Plaintiffs an amount equal to the profits that Everington and White would have received (each 25% of the stock) if they were not prevented from exercising their stock options during the merger of MSI.  Alternatively, Riesen should be ordered to pay Plaintiffs money owed from the merger of MSI.

96.     By reason of the foregoing, Defendant Riesen is liable to Plaintiffs for compensatory damages in an amount in excess of $75,000.00.

## COUNT III - FRAUDULENT MISREPRESENTATION

97.    Plaintiffs relied on the trust and confidence that had been built over the numerous years with Riesen in agreeing to work with Riesen to develop MSI from a start-up company into a valuable business that was to be sold for profit.

98.    Riesen and Plaintiffs had known each other for several years on a professional and personal basis.

99.    Riesen manipulated this relationship with Plaintiffs to induce them to use their unique skill, work ethic and invaluable foreign contacts to agree to work as partners with him to develop MSI into a successful company for his own financial benefit.

100.    Riesen used Plaintiffs' trust to his advantage in inducing them to rely upon his material misrepresentations throughout the years through various forms of communications that he would share in the profits of the sale of MSI once the company became profitable to sell.

101.    Riesen knowingly made these material misrepresentations and never intended to fully share in the profits from the sale of the company.

102.    Everington and White relied upon Riesen's material misrepresentations to their detriment by spending numerous years working countless hours to develop MSI into a lucrative business enterprise that went uncompensated.  Plaintiffs also provided various training to MSI employees and gave business advice to Riesen on numerous occasions. Throughout the years, Everington and White continually

promoted MSI in the marketplace for the company to attain additional beneficial contracts.

103.   Riesen's material misrepresentations caused financial detriment to Plaintiffs.  Upon reliance of Riesen's misrepresentations, Plaintiffs spent countless uncompensated hours developing MSI into a viable company that would be sold for a profit with Riesen withholding their fair share from the sale of the company.

104.   Riesen also knowingly made material misrepresentations to Plaintiffs that they would share in the profits of the sale of the company by entering Stock Option Agreements with Everington and White on two occasions in 2013 and 2016, with the intent to never permit Plaintiffs to exercise their stock options or share in the actual profits of the sale of the company.

105.   Everington and White relied upon Riesen's material misrepresentations by signing the Stock Option Agreements with the understanding that they would be able to exercise their stock options and share in fifty percent of the company's profits upon a sale or merger.  Consequently, Everington and White continued to spend countless hours developing the company.

106.   Riesen's material misrepresentations are evidenced by not being forthcoming regarding all potential sales for MSI and largely keeping Plaintiffs in the dark about the specifics of potential sale opportunities.  He continually refused to share with Plaintiffs pertinent documents pertaining to the merger of the company and hid the actual sale price of the company from Plaintiffs.  Riesen continually made empty promises to Plaintiffs that he would show the transaction documents.

107.    Riesen also knowingly made material misrepresentations to Plaintiffs regarding the sale price of MSI, inducing Everington into signing the Bonus Agreement on behalf of IAS.  Everington signed the Bonus Agreement to his detriment on the belief that Riesen was honoring his promise to pay Plaintiffs their fair share from the sale.

108.    Riesen also knowingly made the material misrepresentation that he would pay Plaintiffs an additional $4 million (when it was feasible for him to do so) upon the signing of the Bonus Agreement.  Riesen never intended to pay the additional money to Plaintiffs.

109.    By reason of the foregoing, Defendant Riesen is liable to Plaintiffs for compensatory damages in an amount in excess of $75,000.00 as well as punitive damages.

## COUNT IV - UNJUST ENRICHMENT

110.    White and Everington provided substantial benefits to Riesen in their work, expertise and services provided over numerous years to help him build MSI from a start-up company into a successful profitable one.

111.    Riesen at all times knew and appreciated the benefits White and Everington provided to him in that regard.

112.    Riesen acknowledged these benefits on a number of occasions over the years.

113.   As a direct result of the efforts of White and Everington, Riesen obtained a buyer for MSI resulting in Riesen's receipt of cash compensation as well as significant stock holdings in the acquiring company.

114.   Given the agreement reached by Riesen, White and Everington prior to the formation of MSI, it would be inequitable for Riesen to keep all of the value generated from the sale of MSI without paying White and Everington the value of their investment and services.

115.   By reason of the foregoing, Defendant Riesen is liable to Plaintiffs for compensatory damages in an amount in excess of $75,000.00.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

a.  Award Plaintiffs Specific Performance under the agreements and permit Plaintiffs to exercise their rights under the stock option agreements;

b.  Award Plaintiffs actual and compensatory damages in an amount exceeding $75,000.00;

c.  Award Plaintiffs punitive damages for Riesen's willful breach of his fiduciary duties and fraudulent inducement of Plaintiffs entering into agreements with him;

d.  Impose a Constructive Trust in favor of Plaintiff Richard White over 25% of the value received by Timothy J. Riesen (or any trust or entity to whom he transferred an interest in MSI), directly or indirectly, from the sale of Madison Springfield Incorporated;

e.   Impose a Constructive Trust in favor of Plaintiff Alexis Everington over 25% of the value received by Timothy J. Riesen (or any trust or entity to whom he transferred an interest in MSI), directly or indirectly, from the sale of Madison Springfield Incorporated;

f.   Award any further relief that the Court deems just and equitable.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiffs hereby request trial by jury.

Dated:       September 16, 2024              Respectfully submitted,


_/s/ Dale R. Sisco_
Dale R. Sisco
dsisco@sisco-law.com
Florida Bar No. 559679
Peter A. Luccarelli
pluccarelli@sisco-law.com
Florida Bar No.: 1030952
Cynthia Sonnemann
Csonnemann@sisco-law.com
Florida Bar No.: 605581
777 S. Harbour Island Blvd.
Suite 320
Tampa, FL  33602
(813) 224-0555
(813) 221-9736 Facsimile
*Counsel for Plaintiff*