## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### Tampa Division

ALEXIS EVERINGTON and
RICHARD WHITE,

     Plaintiffs,

v.                                                                Case No. 8:23-cv-02386-JLB-NHA

TIMOTHY J. RIESEN,

     Defendant.

_____/

### DEFENDANT TIMOTHY J. RIESEN'S
### MOTION TO DISMISS COMPLAINT, OR
### <u>ALTERNATIVELY, FOR A MORE DEFINITE STATEMENT</u>

Defendant Timothy J. Riesen ("<u>Defendant</u>"), by and through undersigned counsel and pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, moves to dismiss the *Amended Complaint* (Doc. 31) filed by Plaintiffs, Alexis Everington ("<u>Everington</u>") and Richard White ("<u>White</u>") (collectively, "<u>Plaintiffs</u>") with prejudice. In support thereof, Defendant states as follows:

### <u>BACKGROUND</u>

1.    Facing the prospect of a dismissal with prejudice, Plaintiffs have filed an Amended Complaint (Doc. 31) to cure the legal defects that were present in their original Complaint (Doc. 2). Despite taking a proverbial second bite of the apple,

1

Plaintiffs have again failed to plead a legally cognizable claim against Defendant. Indeed, Plaintiffs' Amended Complaint is devoid of any new facts that would render the release provision in the Bonus Agreement inapplicable to the case at hand.

2.     In its August 15, 2024 Order (the "Order") (Doc. 29) on Defendant's Motion to Dismiss (Doc. 17), this Court dismissed Plaintiffs' entire original Complaint without prejudice so that Plaintiffs could clarify "the relationship between Plaintiffs, their work, Madison Springfield, and IAS." (Doc. 29 at 12). Specifically, the dispositive issue before the Court was whether Plaintiffs are "affiliates" of International Advisory Services ("IAS") or employees of Madison Springfield, Inc. ("MSI"). (*Id.* at 10). To survive dismissal, Plaintiffs had to plead sufficient facts from which the Court could conclude that they were MSI employees and therefore not bound by the release provision in the Bonus Agreement. (See *id.*)

3.     As further detailed herein, Plaintiffs have not properly pleaded any claim upon which relief may be granted. Plaintiffs have failed to aver any allegations in their Amended Complaint to support the contention that they were MSI employees. To the contrary, Plaintiffs' Amended Complaint conclusively establishes that Plaintiffs were IAS affiliates.

4.     Furthermore, even if Plaintiffs could survive the preclusive effect of the release in the Bonus Agreement, dismissal is nonetheless warranted as Plaintiffs

have not stated valid claims for any of the purported causes of action in their Amended Complaint.

5.    For these reasons, this Court should grant Defendant's Motion to Dismiss and dismiss Plaintiffs' Amended Complaint in its entirety with prejudice.

## LEGAL STANDARD

6.    A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must include sufficient facts which, when accepted as true, states a plausible claim for relief. *Armand v. Lifestance Health Grp., Inc.*, No. 6:23-cv-103-PGB-EJK, 2024 U.S. Dist. LEXIS 17526, at *3 (M.D. Fla. Feb. 1, 2024) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)). "'While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations,' and the court is 'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).

## ARGUMENT AND MEMORANDUM OF LAW

## I.    THE AMENDED COMPLAINT MUST BE DISMISSED WITH PREJUDICE AS PLAINTIFFS HAVE FULLY RELEASED THEIR CLAIMS AGAINST DEFENDANT.

7.    Plaintiffs cannot maintain an action against Defendant as they have fully released all of the claims set forth in their Amended Complaint.

3

8.      In May 2022, MSI and IAS executed a Bonus Agreement (the "<u>Bonus Agreement</u>") as "a mechanism in which White and Everington were to each receive $1 million" (the "<u>Bonus Payment</u>") as a "one-time cash bonus" (Doc. 17-1 at 1) upon the completion of Defendant's sale of MSI. (Doc. 31, ¶ 54).

9.      MSI's agreement to furnish the Bonus Payment to Plaintiffs was expressly conditioned upon IAS's "execution and delivery" of the [Bonus] Agreement," which contained a release through which IAS "on behalf of itself and its predecessors, successors, affiliates, and assigns" agreed to "knowingly, fully, unconditionally, completely and irrevocably forever" release MSI (including MSI's officers, directors, stockholders, partners, and members) from "any and all claims, actions, causes of action, suits, debts, dues, sums of money . . . ." which Plaintiffs "now have or may ever have against any of the Releasees . . . ." (the "<u>Release</u>"). (Doc. 17-1 at 2). The Bonus Agreement superseded "any and all prior agreements, arrangements and understandings, written or oral" between the parties. (*Id.*, at 3).

10.     In his Motion to Dismiss (Doc. 17) the original Complaint (Doc. 2), Defendant argued that Plaintiffs' original Complaint must be dismissed in its entirety as the claims set forth therein are barred by the Release. (Doc. 17 at 4).

11.    Although the Court granted Defendant's Motion (Doc. 29 at 1),[1] it nonetheless granted Plaintiffs leave to file an amended pleading "addressing whether, as Defendant suggests, the Bonus Agreement 'effectuated a full and complete release of all claims and causes of action possessed by IAS and its affiliates, i.e. Everington and White'" against MSI and Defendant. (Doc. 29 at 11-12). Specifically, the Court directed Plaintiffs to provide "clarification . . . as to the relationship between Plaintiffs, their work, Madison Springfield, and IAS" (*Id.* at 12) as Plaintiffs' Complaint was "unclear as to whether Plaintiffs were employed by Madison Springfield or if Plaintiffs were employed by IAS." (*Id.* at 11).

### A.    Plaintiffs Have Failed to Plead Any New Facts to Establish That They Were MSI Employees.

12.    Despite getting a reprieve from dismissal, Plaintiffs have failed to cure the substantive deficiencies noted in the Court's Order. (*Id.* at 11-12). Indeed, as was the case with their first Complaint, Plaintiffs' Amended Complaint is utterly void of any allegations from which this Court can conclude that they were MSI employees.

13.    To the contrary, Plaintiffs' Amended Complaint is rife with allegations which clearly support that Plaintiffs were acting as "affiliates" of IAS:

---

[1] In its Order, the Court granted Defendant's Motion to Dismiss in part without prejudice in furtherance of giving Plaintiffs leave to file an amended complaint. (Order at 17). The Court dismissed Plaintiffs' constructive trust cause of action (Count II) with prejudice. (Order at 17).

a. "Prior to 2011, Riesen and Everington began working together on projects while they were employed at *separate companies* operating in the United States defense sector." (emphasis added) (Doc. 31, ¶ 14).

b. "In 2011, Everington left his employer" and "established a company in the United Arab Emirates" called IAS which "would seek to do the *same type of contracts with the same types of clients* (notably the U.S. government defense sector)." (emphasis added) (*Id.*, ¶¶ 15-17).

c. "Everington and White agreed that the new venture would be formed separately in the United States as MSI and that Riesen would formally own 100% of the new venture …" (*Id.*, ¶ 19).

d. "After the formation of MSI, Everington, Riesen, and White worked cooperatively to build up Madison Springfield operating as partners would in a partnership." (*Id.*, ¶ 20).

e. "*IAS therefore was the vehicle in which Plaintiffs were to be paid for their work performed for MSI's contracts*." (emphasis added) (*Id.*, ¶ 26)

f. *Everington became the director* of International Advisory Services. *White provided independent contract work for International Advisory Services*." (emphasis added) (*Id.*).

g. "White and Everington would carry out the contracts MSI was awarded through IAS." (*Id.*, ¶ 27).

h. "*The Bonus Agreement was a mechanism in which White and Everington were to each receive $1 million* when the transaction closed. (emphasis added) (*Id.*, ¶¶ 54).

i. "Riesen signed the agreement as Chief Executive Officer of MSI. *The Bonus Agreement was between MSI and IAS. Everington signed the Bonus Agreement as a director on behalf of IAS* on May 10, 2022." (*Id.*, ¶¶ 55) (emphasis added).

j. "Riesen sent the $2 million wire to IAS on June 7, 2022.) (*Id.*, ¶ 61).

14.    Bound by the very allegations set forth in their Amended Complaint upon which Plaintiffs rely for each of their purported causes of action, Plaintiffs cannot legitimately argue that they were not "affiliates" of IAS. Plaintiffs concede that Plaintiff Everington founded IAS. Plaintiffs concede that any work they performed on MSI contracts was performed through IAS.[2] Plaintiffs concede that the Bonus Payment to IAS was the "mechanism" by which each would receive $1 million when the MSI sale transaction closed.

15.    In the face of a mountain of undisputed allegations in the Amended Complaint, Plaintiffs only offer conclusory allegations with respect to their purported employment with MSI. Citing to Texas Labor Code § 401, Plaintiffs assert they are employees because an "employee means each person in the service of another under a contract of hire, whether express or implied, or oral or written." (Doc. 31, ¶ 89).[3]

16.    To survive a Rule 12(b)(6) dismissal for failure to state a claim upon which relief can be granted, a plaintiff must rely upon more "than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Amnay*

---

[2] Plaintiff Everington provided services on MSI contracts as a founder and a director of IAS (Doc. 31, ¶¶ 16 and 26) and Plaintiff White provided services on MSI contracts as an independent contractor for IAS. (*Id.* at 26).

[3] Plaintiffs also state that Defendant "breached …. his employment agreement with Plaintiffs" (Doc. 31, ¶ 93), yet Plaintiffs have not attached the alleged employment agreements to their Amended Complaint and Plaintiffs have not alleged any facts pertaining to the terms of such alleged employment agreements.

*v. Select Portfolio Servicing, Inc.*, No. 22-13128, 2023 U.S. App. LEXIS 14535, at *5 (11th Cir. June 12, 2023) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A plaintiff must plead sufficient evidence "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

17.    Even viewing the allegations in the Amended Complaint as true, there is simply no basis upon which this Court can logically conclude anything other than, as a matter of law, Plaintiffs were both "affiliates" of IAS and are therefore barred from maintaining the above-captioned action by the Release in the Bonus Agreement. There aren't any allegations in the Amended Complaint to even remotely support the contention that Plaintiffs were employees of MSI. [4]

18.    In the absence of fraud, duress, coercion, or mutual mistake, a court should uphold an unambiguous release. *Delpino v. Spinks*, No. N13C-03-288 VLM, 2014 Del. Super. LEXIS 442, at *5 (Super. Ct. Aug. 22, 2014). Accordingly, this Court should dismiss the Amended Complaint in its entirety with prejudice.

---

[4] Not only have Plaintiffs failed to allege that they were MSI employees, they have also not explained (and cannot explain) why IAS was paid by MSI for work performed by Plaintiffs on MSI contracts. Even accepting Plaintiffs' assertions regarding the ownership structure as true – *i.e.*, Defendant didn't join IAS because the "United States government would find foreign firm ownership disqualifying for the type of government contracts [MSI] would seek to win" (Doc. 31, ¶ 18) – Plaintiffs cannot explain why they weren't simply made MSI employees or paid directly by MSI instead of through IAS. The reason is clear: Plaintiffs were not MSI employees.

## II.    EVEN IF PLAINTIFFS' CLAIMS AREN'T BARRED BY THE RELEASE, THE AMENDED COMPLAINT MUST NONETHELESS BE DISMISSED.

19.    *Assuming arguendo* that the Release does not bar Plaintiffs from maintaining their action against Defendant, a dismissal pursuant to 12(b)(6) is necessary. Plaintiffs have not stated a legally cognizable claim for breach of fiduciary duty (Count I), breach of the Option Agreements (Count II), fraudulent misrepresentation (Count III), or unjust enrichment (Count IV).

### A.    The Plaintiffs' Claims for Breach of Fiduciary Duty are Barred by the Economic Loss Rule and Independent Tort Doctrine.

20.    "The economic loss rule, also known as the independent injury doctrine, precludes a tort cause of action when (1) the claim is for breach of a duty created solely by contract instead of a duty imposed by law, and (2) the only injury is the economic loss to the subject of the contract itself." *Domel v. Birdwell*, No. 11-12-00200-CV, 2014 Tex. App. LEXIS 9767, at *32 (Tex. App. Aug. 29, 2014). Simply put, "[t]he economic-loss rule generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract." *Fish v. Tex. Legis. Serv., P'ship*, No. 03-10-00358-CV, 2012 Tex. App. LEXIS 749, at *45 (Tex. App. Jan. 27, 2012); *Chapman Custom Homes, Inc. v. Dall. Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) ("The economic loss rule generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy.").

Where tort and contract duties overlap, a party may only allege a tort action (1) if the duty allegedly breached is independent of any contractual duties, and (2) "the harm suffered is not merely the economic loss of a contractual benefit." *Chapman Custom Homes, Inc.*, 445 S.W.3d at 718.

21.    Notably, the economic loss rule applies in the partnership context and will bar a partner's claims for breach of fiduciary duty where the alleged breach of duty is not distinct from contractual obligations under the partnership agreement. *Victory Park Mobile Home Park v. Booher*, No. 05-12-01057-CV, 2014 Tex. App. LEXIS 2209, at *10 (Tex. App. Feb. 26, 2014). In *Booher*, the two sisters (collectively, "the partners") entered into an oral partnership agreement to operate a mobile home park. *Id.* at *1. Under the partnership agreement, the partners agreed that all rents collected would be remitted to the partnership. *Id.* The partnership asserted a claim against one of the partners for breach of the partnership agreement and breach of fiduciary duty. *Id.* The partnership claimed that the partner breached her fiduciary duty to the partnership by failing to remit rents she collected to the partnership—the same conduct on which the partnership's breach of contract claim was based. *Id.* The *Booher* court rejected the partnership's argument that the plaintiff's fiduciary duty existed independent of the partnership agreement because the partnership's alleged damages resulted from the plaintiff's nonperformance of a term of the partnership agreement (i.e., the failure to remit

10

collected rents to the partnership). *Id.* at *10. Accordingly, the economic loss rule barred the partnership's claim and the *Booher* court affirmed. *Id.*

22.     Here, Plaintiffs' breach of fiduciary duty claim (Count I) should be dismissed, with prejudice, because it is barred by the economic loss rule. Plaintiffs allege that they entered into a verbal agreement with Defendant to be 25/25/50 partners in the sale of MSI. (Doc. 31., ¶¶ 2, 19, 20, 24, 27, 34, 35, 44). Now, following the sale of MSI, Plaintiffs' claim that Defendant breached the partnership agreement and his concomitant fiduciary duties by failing to pay Plaintiffs their respective 25% shares in the proceeds from the sale. This is exactly the same conduct that forms the basis for Plaintiffs' purported breach of contract claim. (*Compare* Doc. 31, ¶¶ 73-76 *with* ¶ 85). As was the case with *Booher*, Plaintiffs have not alleged any tortious conduct separate and distinct from Defendant's contractual duties under the alleged partnership agreement.

23.     Moreover, as was also the case under *Booher*, all of Plaintiffs' alleged damages constitute the economic benefit under the alleged partnership agreement – "half the proceeds from the sale of [MSI]." (Doc. 31, ¶¶ 8, 34). As a result, Count I is barred by the economic loss rule and should be dismissed with prejudice.

**B.** **Plaintiffs' Claims for Breach of the Option Agreements Should Be Dismissed Because Plaintiffs Fail to Allege that They Were Employees at the Time of the Sale.**

24.     "'A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation.'" *Tabe v. Tex. Inpatient Consultants, LLLP*, 555 S.W.3d 382, 386 (Tex. App. 2018). "Conditions precedent occur after the execution of a contract but must occur before there is a right to immediate performance." *Id.* "A party seeking to recover under a contract bears the burden of proving that all conditions precedent have been satisfied." *Chalker Energy Partners III, LLC v. Le Norman Operating LLC*, 595 S.W.3d 668, 673 (Tex. 2020). "Texas courts regularly enforce conditions precedent to contract formation and reject legal claims that are artfully pleaded to skirt unambiguous contract language, especially when that language is the result of arm's-length negotiations between sophisticated business entities." *Energy Transfer Partners, L.P. v. Enter. Prods. Partners, L.P.*, 593 S.W.3d 732, 738 (Tex. 2020).

25.     Here, the Option Agreements contain a condition precedent to their execution, *i.e.* in order to exercise their alleged options, Everington and White must have been "employed by MSI at the time of such change of control." (Docs. 19-2 and 19-3 at ¶ 2(b)); (Docs. 19-4 and 19-5 at ¶ 2(b)). Notably, Plaintiffs do not allege that they were employees of MSI at any time, much less at the time of the sale. The closest Plaintiffs come to alleging employee status is by observing that the Option

Agreements refer to them as employees and that they "may" be considered employees of MSI. (Doc. 31, ¶¶ 32, 87). These allegations are legally insufficient to state a claim for breach of the Option Agreements. To state a claim under the Option Agreements, Plaintiffs must allege that they were employees of MSI at the time of the sale. Given the obligations imposed by Rule 11, they have appropriately refrained from making such an allegation. Their inability and unwillingness to do so necessitates dismissal of the claim for breach of the Option Agreements with prejudice.

### C.    Plaintiffs Have Failed to State a Claim for Fraudulent Misrepresentation or Inducement

26.    As an initial matter, Plaintiffs have failed to plead their fraudulent misrepresentation claim with the particularity. Under Rule 9(b), "[i]n alleging fraud . . . , a party must state with particularity the circumstance constituting fraud." Fed. R. Civ. P. 9(b). "This requirement can be met by pleading (1) precisely what statements or omissions were made; (2) the time and place the statements were made and by whom; (3) the content of the statements and how they misled the plaintiff; and (4) what the defendants obtained as a consequence of the fraud. *Shaheen Real Estate, LLC v. Touizer*, No. 19-60942-CIV-SMITH, 2020 U.S. Dist. LEXIS 265148, at *11-12 (S.D. Fla. July 21, 2020).

27.    Here, Plaintiffs generally allege that Defendant (i) misrepresented his intent to perform the alleged verbal partnership agreement and to allow Plaintiffs

to "share in the profits of the sale of MSI once the company became profitable," (Doc. 31, ¶¶ 99-101, 103, 104); (ii) made "empty promises" to Plaintiffs that he would show them the "transaction documents" related to the sale of MSI, (Doc. 31, ¶ 106); and (iii) made misrepresentations "regarding the sale price of MSI" and "an additional $4 million" disbursement following the sale of MSI (Doc. 31, ¶¶ 107-108). Plaintiffs completely fail to allege when and where these alleged misrepresentations were made or the specific content and substance of the purported misrepresentations. As a result, Plaintiffs have failed to plead their fraudulent misrepresentation claim with the required particularity, and therefore, Count III should be dismissed.

28.    Second, and more significantly, based on Plaintiffs' own allegations, they could not have justifiably relied on Defendant's alleged misrepresentations. "One of the elements that a plaintiff must prove to establish a fraudulent inducement claim is that it actually and justifiably relied on the alleged misrepresentations to suffer injury." *H2O Sols., Ltd. v. PM Realty Grp., LP*, 438 S.W.3d 606, 624 (Tex. App. 2014). "One may not justifiably rely on a representation when there are 'red flags' indicating such reliance is unwarranted." *Mikob Props. v. Joachim*, 468 S.W.3d 587, 598 (Tex. App. 2015). Further, "[r]eliance upon an oral representation that is directly contradicted by the express, unambiguous terms of a written agreement between the parties is not justified as a matter of law." *Id.*;

*DRC Parts & Accessories, L.L.C. v. VM Motori, S.P.A.*, 112 S.W.3d 854, 859 (Tex. App. 2003) ("[A] party who enters into a written contract while relying on a contrary oral agreement does so at its peril and is not rewarded with a claim for fraudulent inducement when the other party seeks to invoke its rights under the contract.").

29.    Here, Plaintiffs' reliance on the alleged misrepresentations was not justified because the Option Agreements and Bonus Agreement contradict the alleged misrepresentations. The Option Agreements directly contradict Defendant's alleged misrepresentation that Plaintiffs had an unqualified right to share in half the proceeds from the sale of MSI. To the contrary, the Option Agreements specifically condition Plaintiffs' option rights on being employees at the time of the sale. Therefore, Plaintiffs could not have justifiably relied on Defendant's alleged misrepresentations concerning their allegedly unqualified entitlement to half of the sale proceeds.

30.    Further, the Bonus Agreement directly contradicts Defendant's alleged misrepresentation regarding the additional $4 million payment to Plaintiffs. Plaintiffs could not have justifiably relied on Defendant's alleged misrepresentation because the Bonus Agreement specifically provides for a "one-time cash bonus of USD $2,000,000" in exchange for a release of any other claims that Plaintiffs may have had against MSI or Defendant. Therefore, Plaintiffs could

not have justifiably relied on Defendant's alleged misrepresentation that he intended to pay them an additional $4 million post-closing.[5]

31.    Moreover, based on Plaintiffs' own allegations, there were numerous "red flags" that preclude any argument that Plaintiffs justifiably relied on Riesen's representations concerning the sale price. Plaintiffs allege that Riesen kept them "in the dark" as early as November 2020, (Doc. 31, ¶ 44); was "downplaying" the sale price in May 2021, (Doc. 31, ¶ 49); and "admitted that at [the] purported sale number White and Everington were each due $3 million" in late 2021/early 2022, (Doc. 31, ¶ 51). In light of these red flags and Defendant's purported prior admission that Plaintiffs were each entitled to $3 million based on MSI's sale price, Plaintiffs could not have justifiably relied on Defendant's alleged misrepresentations concerning the additional $4 million payout as a matter of law.

32.    Finally, the economic loss rule applies to claims based on fraudulent misrepresentations occurring after the formation of the subject contract. *W. Loop Hosp'y, LLC v. Hous. Galleria Lodging Assocs., LLC*, 649 S.W.3d 461, 487 (Tex. App. 2022) (explaining the mere "misrepresentations" of intent to perform a contractual duty is not an independent tort and is not actionable fraud). Here, Plaintiffs have wholly failed to allege any misrepresentation by Defendant that occurred prior to

---

[5] Even in alleging that they were supposedly promised an additional $4 million by Defendant, Plaintiffs state that such payment would come through IAS (as opposed to it coming to them directly). (Doc. 31, ¶ 57).

the parties alleged verbal partnership agreement. Plaintiffs allege that Everington, White, and Riesen formed an enforceable verbal partnership agreement prior to the formation of MSI. (Doc. 31, ¶ 31) (calling verbal partnership agreement a "pre-formation agreement"). Consequently, all of Defendant's alleged misrepresentations concerning Plaintiffs' entitlement to the MSI proceeds are not actionable in tort.

33.    To the contrary, the alleged misrepresentations are nothing more than promises to perform existing contractual obligations – namely to distribute equal 25% shares of the sale proceeds to Plaintiffs under the verbal partnership agreement. The alleged misrepresentations thus arise from the partnership agreement itself and are not independent of the contract. Therefore, Count III must be dismissed as a matter of law.

### D.    Plaintiffs Improperly Comingle Breach of Contract Claims

34.    Under Rule 10, "each claim founded on a separate transaction or occurrence . . . must be stated in a separate count" "[i]f doing so would promote clarity." Fed. R. Civ. P. 10(b). A defendant may "move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e).

35.     Through Count II, Plaintiffs assert a claim against Defendant for "breach of agreements" – (i) the verbal partnership agreement and (ii) the Option Agreements. These are claims based on three separate transactions that must be pleaded in separate counts. Assuming that Count II is not dismissed with prejudice, the Court should require Plaintiffs to plead their separate breach of contract claims in accordance with Rule 10(b).

WHEREFORE, Defendant Timothy J. Riesen respectfully requests that the Court grant his Motion to Dismiss, dismiss the Amended Complaint with prejudice, and grant Defendant such additional relief as is just and proper.

Date: October 8, 2024

/s/ Erik Johanson
Erik Johanson, Esq.
Florida Bar No. 106417
Joseph R. Boyd, Esq.
Florida Bar No. 1039873
ERIK JOHANSON PLLC
3414 W Bay to Bay Blvd
Suite 300
Tampa, Florida 33629
(813) 210-9442
erik@johanson.law
jr@johanson.law
ecf@johanson.law

H. Scott Johnson, Jr., Esq.
DUNLAP BENNETT & LUDWIG PLLC
8300 Boone Boulevard, Suite 250
Vienna, Virginia 22182
(703) 777-7319 (Tel.)
sjohnson@dbllawyers.com
(admitted *pro hac vice*)

*Counsel for Defendant Timothy J. Riesen*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was served on this 8th day of October, 2024 via the Court's ECF filing system to all parties who receive electronic service in the ordinary course of business.

/s/ Erik Johanson
Erik Johanson, Esq.