**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA**

ALEXIS EVERINGTON
and RICHARD WHITE

      Plaintiffs,

v.

TIMOTHY J. RIESEN

      Defendant.

Case No.  8:23-cv-02386-JLB-NHA

**PLAINTIFFS' RESPONSE TO DEFENDANT TIMOTHY J. RIESEN'S
MOTION TO DISMISS COMPLAINT, OR ALTERNATIVELY, FOR A
MORE DEFINITE STATEMENT**

Plaintiffs, Alexis Everington and Richard White ("Plaintiffs", "Everington" or "White"), by and through the undersigned counsel pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, file their response to Defendant, Timothy J. Riesen's (the "Defendant" or "Defendant Riesen"), motion to dismiss the complaint and respectfully request this Honorable Court to deny Defendant's motion.  In support of their response, the Plaintiffs submit the following memorandum of law.

**INTRODUCTION**

The details set forth in Plaintiffs' Amended Complaint need not be repeated at length here.  However, a brief overview of the facts is as follows.  Previously, Plaintiffs worked with Defendant on various contracts for the United States government while working for other employers.  The parties became friends and decided to form a company of their own to conduct the same type of contract work. Plaintiffs and

1

Defendant had an oral agreement to form a company that would support public and private organizations seeking insights into foreign markets, competitors, and industry trends. The company would continue to work with the same types of contracts the parties have done before, notably in the United States government military intelligence, and defense sectors. Defendant represented to Plaintiffs that it would not be possible for Plaintiffs to be owners of a United States company due to the highly sensitive nature of the work and Plaintiffs not being citizens of the United States. Defendant and Plaintiffs further agreed the Operational Security (OPSEC) requirements of the sensitive work undertaken made it wise for Plaintiffs to not be openly identified as partners of the company. Due to the secrecy and dangerous conditions in obtaining sensitive information in foreign countries, it was sensible that Everington and White remain secret partners with Defendant.

Defendant formed Madison Springfield, Inc. ("Madison Springfield" or "MSI") in Texas with Defendant as the sole shareholder. However, the understanding between Defendant and Plaintiffs was that they were partners in creating and developing Madison Springfield into a successful business. International Advisory Services ("IAS") was formed in the United Arab Emirates. IAS is owned by Everington's sister. IAS therefore was the vehicle in which Madison Springfield made payments for work performed by Everington and White for the benefit of Madison Springfield. At all times, the parties worked together as partners to build Madison Springfield into a successful enterprise as reflected by the frequent conversations and communications between the parties regarding projects and the eventual sale of

Madison Springfield.

For years, Plaintiffs continued to work with Defendant as friends and partners in establishing MSI into a successful business. It was beneficial for Defendant to work as a partnership with Plaintiffs due to their unique skill set and expertise in this area of contract work including their contacts in foreign countries. The parties worked actively for years as partners in obtaining various contracts until the acquisition of MSI.

On two separate occasions, Plaintiffs and Defendant memorialized their oral agreement for Plaintiffs to share in Madison Springfield's profits through stock option agreements. These agreements are titled "Incentive Stock Option Agreement." *See* True and correct copies of the Stock Option Agreements have been attached hereto as **Exhibits B, C, D, E**. In 2013, Everington and White were each individually given an option to purchase ten percent of Madison Springfield's common stock in the event of a sale or merger. *See* **Exs. B, C**. Later, on November 21, 2016, Everington's and White's ability to purchase the company's common stock increased from ten percent to twenty-five percent. *See* **Exs. D, E**. Therefore, Everington and White were rightful owners to fifty percent of Madison Springfield's common stock upon the company's sale or merger. Each time, Plaintiffs were named as employees under the Stock Option Agreements (although in reality they were partners with Riesen). Plaintiffs continued to work with Defendant in building Madison Springfield into a profitable company with lucrative government contracts.

At some point in 2022, Madison Springfield was acquired by a third party. Contrary to the Stock Option Agreements, Defendant never gave Plaintiffs formal notice of the sale of Madison Springfield and did not fully disclose to Plaintiffs the sales terms. Plaintiffs were never given their right to exercise their stock options to each acquire twenty-five percent of Madison Springfield's common stock before the sale closed. Instead, Defendant kept all the common shares of stock and profits to himself during the company's acquisition.

IAS on or about May 10, 2022, signed a Bonus Agreement with Madison Springfield. Later in June 2022, pursuant to the Bonus Agreement, two million dollars was wired to IAS. The Bonus Agreement was separate and apart from the Stock Option Agreements given to Everington and White individually. The Bonus Agreement was between Madison Springfield and IAS. Everington signed the Bonus Agreement on behalf of IAS as Director of Operations. *See* A true and correct copy of the Bonus Agreement has been attached hereto as **Exhibit A**. White did not sign the Bonus Agreement. Importantly, Plaintiffs were not given the option to exercise their stock options during the acquisition of Madison Springfield. To date, Plaintiffs have not seen the merger documents pertaining to the acquisition despite repeated requests to Defendant.

## ARGUMENT AND MEMORANDUM OF LAW

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a Court is "limited to the four corners of the complaint." *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002); *Wilchombe v. Teevee Toons, Inc.*, 555 F.3d 949, 958 (11th

Cir. 2009) (same). A court "accept[s] the factual allegations in the complaint as true and construe[s] them in the light most favorable to the plaintiff." *Echols v. Lawton*, 913 F.3d 1313, 1318 (11th Cir. 2019). Therefore, a complaint must set forth well-pled facts that are more than mere conclusions or a recitation of the elements of a cause of action. *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir. 2008).

Accordingly, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation and quotations omitted); *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (explaining "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."). Plaintiffs' well-pled Amended Complaint sets forth valid causes of action and Defendant's motion is due to be denied.

## I.    PLAINTIFFS HAVE NOT RELEASED THEIR CLAIMS

Defendant's lengthy argument that Plaintiffs in their Amended Complaint have failed to allege that they were employees of MSI and therefore are barred from suing based on the release contained in the Bonus Agreement is erroneous (Doc. 39, pp. 5-8). Contrary to Defendant's position, Plaintiffs have repeatedly alleged in their Amended Complaint that they worked as partners with Defendant Riesen in the formation and success of MSI (Doc. 31, pp. 4-12). Alternatively, if the Court were to consider Plaintiffs as employees, in consideration of Texas Labor Section 401.012(a), Plaintiffs have also alleged that Defendant represented that they were employees (*Id.*, ¶¶ 87-89). Importantly, Plaintiffs' status as employees does not negatively affect their

partnership status.

Plaintiffs' Amended Complaint sets forth the following allegations:

a. "After the formation of MSI Everington, Riesen, and White worked cooperatively to build up Madison Springfield operating as partners would in a partnership" (*Id.*, ¶ 20).

b. "White and Everington would attend meetings as representatives of Madison Springfield, provide job training to MSI employees, carry business cards identifying them as principals of MSI, use MSI emails, discuss all work opportunities with Riesen, provide Riesen advice on contracts and would generally do whatever was necessary for MSI to meet its contractual obligations with its customers" (*Id.*, ¶ 21); *See also* A true and correct copy of White's business card is attached hereto as **Exhibit F**.

c. "Riesen would confide in Plaintiffs about the intimate details of the workings of MSI including the status of negotiations during the bids for new contracts. Riesen would also discuss with Plaintiffs and would receive advice about the feasibility and costs of various contracts for MSI" (Doc. 31, ¶ 22).

d. "Riesen would have been unable to develop MSI's business and complete various contracts for its customers had it not been for his partnership with Plaintiffs due to their unique skill set and expertise" (*Id.*, ¶ 24).

e. "In essence, while Riesen was the face of Madison Springfield to existing and potential customers, Plaintiffs were the backbone of the company" (*Id.*, ¶ 25).

f. "The stock options signified the invaluable benefits and expertise Plaintiffs brought to developing MSI into a successful enterprise. The Stock Option Agreements named Plaintiffs as employees of MSI" (*Id.*, ¶ 33).

g. "Satisfied with Riesen having purportedly followed through to memorialize the terms of the pre-formation agreement to work as partners, White and Everington continued to devote their time, talent, and efforts to maximizing the value of MSI with the understanding they would receive half of the sale profits in the future" (*Id.*, ¶ 34).

h. "Consequently, during Madison Springfield's development, Everington and White held themselves out as partners of MSI and continued to promote MSI's name in the industry. In other words, Plaintiffs promoted MSI as the

company performing the contracts sensitive in nature rather than IAS" (*Id.*, ¶ 35).

i. "Plaintiffs dedicated numerous hours and years as partners with Riesen in developing MSI into a lucrative enterprise with many of those hours being uncompensated" (*Id.*, ¶ 36).

j. "Riesen also listed Everington as Director of Research and White as Director of Analysis in MSI's company materials" (*Id.*, ¶ 37).

k. "During this conversation, Riesen reiterated the agreement they previously reached and acknowledged the critical role White and Everington played in growing the company. In other words, MSI's success was due to the partnership and hard work among the three men" (*Id.*, ¶ 42).

Therefore, Plaintiffs have alleged the premise upon which MSI was founded: all three men orally agreed to work as partners. Plaintiffs believed and relied upon their friend, Defendant Riesen's representations that they would work as secret partners to form and build MSI. Their belief was further reinforced by receiving half of the stock options in MSI. Also emphasizing their role was Defendant Riesen having them carry business cards identifying them as partners. *See* **Ex. F**. Thus, IAS, was a vehicle in which Plaintiffs were to be paid for their partnership work performed for MSI. IAS did not negate Plaintiffs' partnership with Defendant Riesen.

Rather, based on consideration of the continuum of factors listed under Texas's Revised Partnership Act, Plaintiffs were partners with Defendant Riesen in collaboratively building MSI. Importantly, a written partnership agreement is not indicative of the existence of a partnership. *See also State v. Harrington*, 407 S.W.2d 467, 478 (Tex. 1966) (holding that oral mining partnership agreement existed); *Nguyen v. Hoang*, 507 S.W.3d 360, 375 (Tex. App. 2016) (determining that evidence supported

finding that despite no written agreement, the continuum of factors established a partnership among family members); *Sewing v. Bowman*, 371 S.W.3d 321, 336 (Tex. App. 2012) (upholding the jury's determination that sufficient evidence supported the existence of an oral partnership agreement).

Numerous communications between the parties highlight that Defendant Riesen considered Plaintiffs to be his partners, and they worked collaboratively together in obtaining and completing contracts. On countless occasions over various social media, including texts, Defendant Riesen expressed that the success of MSI was a result of their combined effort. Consequently, while Defendant Riesen was the face of MSI, Plaintiffs were the backbone of the company, contributing their unique ability and strategic work effort otherwise known as "sweat equity" to the company. *See Houle v. Casillas*, 594 S.W.3d 524, 551 (Tex. App. 2019) (explaining "sweat equity" can support a finding of contribution to a partnership). At all times, Plaintiffs believed their friend Defendant Riesen that they had to be secret partners and not openly own any part of MSI due to obtaining contracts sensitive in nature from the United States government. *See Malone v. Patel*, 397 S.W.3d 658 (Tex. App. 2012) (upholding jury verdict finding oral agreement of partnership despite paperwork showing parties were employees where the owner of company informed partners that they could not own the company until they attained their green cards). More telling, Defendant Riesen on two occasions gave Plaintiffs stock options of MSI, eventually equaling half of the stocks from MSI demonstrating they were partners with Riesen. *Ingram v. Deere,* 288 S.W.3d 886, 895-98 (Tex. 2009); *Garcia v. Lucero*, 366 S.W.3d 275, 277 (Tex. App.

2012); *See* TEX. BUS. ORGS. CODE § 152.051(a) (listing the five factors of creation of a partnership as: "(1) receipt or right to receive share of profits of the business; (2) expression of an intent to be partners in the business; (3) participation or right to participate in control of the business; (4) agreement to share or sharing (A) losses of the business; or (B) liability for claims…against the business; [and] (5) agreement to contribute or contributing money or property to the business.").

Defendant Riesen listing Everington as Director of Research and White as Director of Analysis in MSI's company materials also demonstrates he viewed them as an integral part of the company.  *See e.g.* A true and correct copy of MSI's chart is attached hereto as **Exhibit G** (referencing Everington as Research Lead and White as Analysis Lead).  Consequently, if the Court were to consider Plaintiffs as employees of MSI, that consideration does not negate that they were partners with Riesen.  *See Malone v. Patel*, 397 S.W.3d at 679 (rejecting proposition that an employee cannot be considered an equal partner in a business); *See also Fed. Express Corp. v. Dutchsmann¸* 846 S.W.2d 282, 283 (Tex. 1993) (explaining that under Texas's long-standing rule, an employee at will does not have to be memorialized in a written agreement); *Cf. Runge v. Raytheon E-Systems, Inc.*, 57 S.W.3d 562, 565 (Tex. Ct. App. 2001) (stating that an at-will employee "may become contractual based on oral statements of those in authority.").  Correspondingly, Plaintiffs performing work under IAS does not nullify their partnership with Defendant Riesen or any other identified status pertaining to MSI.  Accordingly, Plaintiffs have set forth well-pled facts that are more than mere conclusions or a recitation of the elements of a cause of action that they were partners

with Defendant Riesen and are rightfully owed money.  *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1303 (11th Cir. 2008).

Contrary to Defendant's argument, the release contained in the Bonus Agreement did not extinguish Plaintiffs' rights to monies owed to them.  As argued in their previous response to Defendant's first motion to dismiss, the Bonus Agreement and Stock Option Agreements are separate contracts.  The plain words of the Bonus Agreement state that "[t]his Bonus Agreement … is made as of [ ], 2022, between Madison Springfield Inc., a Texas corporation (the "Company"), and International Advisory Services, an United Arab Emirates entity ("Recipient")."  *See* **Ex. A**.  The clear and unambiguous contract language states that the agreement is between MSI and IAS.  *See Osborn ex. rel. Osborn v. Kemp*, 991 A.2d 1153, 1159-60 (Del. 2010) (stating that the court gives "effect to the plain-meaning of the contract's terms and provisions" when the "contract is clear and unambiguous.").  The Bonus Agreement contains no language specifically identifying that it is between MSI and Everington or White.  Rather, the Bonus Agreement clearly only names MSI and IAS as the parties to the agreement.

The Bonus Agreement includes the word "affiliates."   However, a full reading of the agreement indicates that an affiliate's release is "based on, arising out of, or resulting, directly or indirectly, to the negotiation, execution and delivery of this Agreement or any amounts payable by the Company or its affiliates." **Ex. A**., ¶ 5.  In this respect, the Stock Option Agreements were separate agreements from the Bonus Agreement.  Moreover, none of the parties were under the assumption that Defendant

Riesen's payment of $2 million to IAS would extinguish the additional minimum $4 million owed to Plaintiffs (Doc. 31, ¶ 62).  Notably, after the Bonus Agreement was signed, Defendant's attorney sent Plaintiffs a supplemented letter dated September 13, 2022, regarding MSI's acquisition.  A true and correct copy of the letter is attached hereto as **Exhibit H**.[1]  The letter unequivocally states that "I understand that Tim Riesen is committed to paying IAS another $4 million if and when he is able to liquidate shares, he acquired in the Transaction as detailed below."  *Id*.  Therefore, Defendant Riesen after the Bonus Agreement admitted to owing Plaintiffs additional money.

Above all, Defendant's attempt to read further language into the release language contained in the agreement to bar Plaintiffs' suit would cause the court to "destroy or twist [contract] language under the guise of construing it."  *Lorillard Tobacco Co. v. American Legacy Foundation*, 903 A.2 728, 739 (Del. 2006).  To allow Defendant to block Plaintiffs from exercising their stock options or not receiving additional monies owed to them, without any ramifications to Defendant, would prevent Plaintiffs from "receiving the fruits of the bargain" of their hard-earned unique work provided in developing MSI into a successful business.  *Dunlap v. State Farm Fire and Casualty Co.*, 878 A.2d 434, 442 (Del. 2005) (internal quotations omitted).

Defendant also claims that the release is valid absent fraud (Doc. 39, ¶ 18).  However, Plaintiffs in their Amended Complaint have asserted a fraud claim regarding

---

[1] The full letter was not provided due to the confidentiality of the summary of the transaction terms.

the agreement (*See* Doc. 31, ¶¶ 97-109). Even assuming that the release is applicable to Plaintiffs, it is invalidated due to Defendant Riesen's fraudulent misrepresentations in inducing Everington to sign the agreement. Prior to the execution of the agreement, he fraudulently misrepresented that he would pay them additional monies from the sale of MSI. Undoubtedly, the Bonus Agreement would not have been executed had Plaintiffs believed Defendant Riesen would not fulfill his promise to pay them additional monies owed. *See Hicks v. Sparks*, No. 522, 2013, 2014 Del. Lexis 142, at *4 (Del. 2014) (explaining Delaware courts will not uphold a release in an agreement "where it was the product of fraud, duress, coercion, or mutual mistake."); *Lincoln Nat'l Life Ins. Co. v. Joseph Schlanger 2006 Ins. Trust*, 28 A.3d 436, 441 (Del. 2011) (stating that fraud in the inducement renders a contract "'voidable' at the option of the innocent party." (internal citation omitted)); *PHL Variable Ins. Co. v. Price Dawe 2006 Ins. Trust*, 28 A.3d 1059, 1067 (Del. 2011) (same). Moreover, the release contained in the Bonus Agreement, at a very minimum, provides no mention of releasing claims for fraud, and therefore cannot serve as a basis to extinguish Plaintiffs' rights. *See E.I. Du Pont de Nemours & Co. v. Fla. Evergreen Foliage*, 744 A.2d 457, 460-61 (Del. 1999) (determining that plaintiffs' fraud claim was not barred by release that at a very minimum did not provide release of fraud claims); *See also Adams v. Jankouskas,* 452 A.2d 148, 156 (Del. 1982) (explaining "that words of general application used in the release which generally follow a specific recital of the subject matter concerned are not to be given their broadest significance but will be restricted to the particular matters referred to in the recital."). Accordingly, the release does not provide a basis to dismiss

Plaintiffs' claims.

Based on the aforementioned reasons, the Court should deny Defendant's motion to dismiss.

## II.   PLAINTIFFS HAVE STATED LEGALLY COGNIZABLE CLAIMS

Plaintiffs have stated legally cognizable claims.  Indeed, this Court has already determined that Plaintiffs have sufficiently alleged a cause of action for breach of a fiduciary duty (Doc. 29, p. 14).  Defendant's attempt to dismiss the claims are fruitless.

### A.   Plaintiffs' Breach of Fiduciary claim is not barred by the Economic Loss Rule.

Contrary to Defendant's argument, the economic loss does not preclude Plaintiffs from bringing a breach of a fiduciary claim.  Defendant incorrectly argues that Plaintiffs' fiduciary claim is based solely on his breach of contract by not paying Plaintiffs their share of profits (Doc. 39, pp. 9-11).  Certainly, Defendant's depiction of Plaintiffs' claim is not precise and overstates the economic loss rule.[2]  *See Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) (clarifying that the economic loss rule "does not bar all tort claims arising out of a contractual setting."); *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 418-19 (Tex.

---

[2] In his argument, Defendant Riesen relies on the decision in *Victory Park Mobile Home Park v. Booher*, No. 05-12-01057, 2014 Tex. App. 1017512 (Tex. App. Feb. 26, 2014).  However, as indicated, the Texas Supreme Court has ruled that the economic loss rule is not a complete bar for tort claims.  *See Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d at 718; *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d at 418-19.  Furthermore, this case is distinguishable from *Booher.*  Unlike the sister in *Booher* that only claimed a loss of rent, Plaintiffs here have separately alleged that they relied upon Defendant Riesen to act in their best interest, and he failed to do so (Doc. 31, ¶ 71).  Moreover, Plaintiffs were left uncompensated for their numerous hours of hard work in developing MSI into a lucrative business (*Id.* at ¶ 36).

2011) (explaining that the economic loss rules "does not swallow all [tort] claims" and listing torts that are not precluded by the rule including breach of fiduciary duty, fraud and fraud in the inducement); *George Flemming & Flemming & Assocs., LLPP v. Kinney*, 395 S.W.3d 917, 925-26 (Tex. App. 2013) (determining party's characterization of claims only deriving based on a contract was improper); *Domel v. Birdwell*, No. 11-12-00200-CV, 2014 Tex. App. LEXIS 9767, at *32 (Tex. App. August 29, 2014) (stating "Texas jurisprudence has long recognized the coexistence of obligations and duties separately imposed by contract and tort."). Rather, Plaintiffs' breach of fiduciary claim is centered on Defendant Riesen placing his interests ahead of his own, and therefore, the economic loss rule is not a bar to Plaintiffs' recovery. *Id.; See e.g. Formosa Plastics Corp. United States v. Presidio Eng'Rs & Contrs.*, 960 S.W.2d 41, 46-47 (Tex. 1998) (holding that economic loss rule does not bar tort damages because a fraudulent representation causes only economic losses); *American Nat'l Petroleum Co. v. Transcontinental Gas Pipe Line Corp.*, 798 S.W.2d 274, 278 (Tex. 1990) (determining that tortious interference with a contract did not bar breach of contract claim despite tort claim compensating for same economic loss under breach of contract claim). In other words, Defendant placed his interest ahead of Plaintiffs' interest in retaining the majority of profits from the MSI's acquisition for his financial benefit. As a result, Plaintiffs' claim is not barred by the economic loss rule.

Furthermore, Plaintiffs in their Amended Complaint have alleged other losses separate from the loss of shared profits. Plaintiffs alleged that they "dedicated numerous hours and years as partners with Riesen in developing MSI into a lucrative

14

enterprise with many of those hours being uncompensated" (Doc. 31, ¶ 36).  In any event, Plaintiffs can rightfully plead alternative causes of action including breach of contract claims along with a breach of a fiduciary duty claim.  *See Deutsch v. Hoover, Bax and Slovacek, LLP*, 97 S.W.3d 179, 190 (Tex. App. 2002) (explaining that parties may plead in the alternative); *Field v. AIM Mgmt. Group, Inc.*, 845 S.W.2d 469, 472 (Tex. App. 1993) (clarifying "that a party may plead as many separate claims or defenses he has, regardless of consistency').

Certainly, Defendant Riesen, as a partner, by failing to provide full disclosure of MSI's acquisition and preventing Plaintiffs from exercising their stock options, breached "a strict duty of good faith and candor, as well as a duty [to Plaintiffs] to make full disclosure of all matters affecting the partnership and to account for all partnership profits." *Houle v. Casillas*, 594 S.W.3d 524, 552 (Tex. App. 2019).  The parties' long history including their business and personal relationships underscores the fiduciary relationship.  Plaintiffs were therefore justified in relying upon their friend's representations. *See e.g. Dominguez v. Brackery Enterprises, Inc.*, 756 S.W.2d 788, 791 (Tex. App. 1988) (explaining that when "there exists a long association in a business relationship, as well as a personal friendship, the first party is justified in placing confidence in the belief that the other party will act in his best interest."); *See also Malone v. Patel*, 397 S.W.3d at 681 (upholding jury's verdict regarding oral partnership agreement because it was supported by the evidence).  Therefore, Plaintiffs' breach of fiduciary claim should not be dismissed.

**B.**     **Plaintiffs' claims for breach of the Option Agreements should not be dismissed.**

Through artful arguing (albeit incorrect), Defendant Riesen contends that Plaintiffs may not maintain a cause of action for breach of the Stock Option Agreements because they failed to meet the condition precedent of being employees of MSI (Doc. 31, pp. 12-13). Defendant's argument is merely a recitation of his previous argument that Plaintiffs' claims should be dismissed because they are not employees. Plaintiffs have addressed this notion at length in their previous argument and it need not be repeated here. The Plaintiffs have amply alleged that they were secret partners with Defendant Riesen, which is strengthened by the stock options given to them.

Furthermore, there is no limiting language contained in the Stock Option Agreements creating a condition precedent. *See Tabe v. Tex. Inpatient Consultants, LLLP*, 555 S.W.3d 382, 386 (Tex. App. 2018) (explaining that to make performance of a contract conditional it generally includes the words "if", "provided that", "on the condition that" or other similar conditional language); *See also Cal-Tex Lumber Co. v. Owens Handle Co.*, 989 S.W.2d 802, 809 (Tex. App. 1999) (clarifying that condition precedents are disfavored "because of their harshness in operation" and a court will not construe it in a contract provision unless compelled to do so); *Criswell v. European Crossroads Shopping Center, Ltd.*, 792 S.W.2d 945, 948 (Tex. 1990) (emphasizing that conditions precedent are disfavored under Texas law due to their "harshness in

operations.").  The disfavored notion of condition precedent, therefore, should not be read into the Stock Option Agreements.

Moreover, Defendant's reliance on *Chalker* and *Energy Partners* is equally misplaced.  In *Chalker v. Energy Partners III, LLC v. Le Norman Operating LLC*, the Texas Supreme Court held that an email did not constitute a condition precedent in forming a contract between the parties during an arm's length transaction. 595 S.W.3d 668, 674 (Tex. 2020).  Similarly, in *Energy Transfer Partners, L.P. v. Enter. Prods. Partners, L.P.*, the Texas Supreme Court held that the parties could agree that certain conditions precedent had to be met before a partnership was created.  593 S.W.3d 732 (Tex. 2020). Here, the parties had agreements in place and were not working at arm's length.  Thus, there is no condition precedent present to negate the existence of the Stock Option Agreements.  Simply stated, Plaintiffs had a partnership agreement with Defendant Riesen to share in profits upon MSI's sale or acquisition.  This agreement was memorialized in the Stock Option Agreements.  Defendant Riesen should be held accountable for his side of the deal because "[i]n Texas, a deal is, of course, a deal." *Chalker v. Energy Partners,* 595 S.W.3d at 669.

### C.    Plaintiffs have stated a claim for Fraudulent Misrepresentation or Inducement.

Plaintiffs have set forth their fraud claim with particularity in their Amended Complaint.[3]    Plaintiffs    alleged    Defendant    made    continuous    material

---

[3] The elements of fraud under Texas law are: "(1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the

misrepresentations that he promised to share in half the profits of MSI's sale or acquisition with never the intent to perform.  Plaintiffs to their detriment spent countless uncompensated hours pouring their sweat equity into the company without being later fully compensated after the company's acquisition.  Contrary to Defendant's position, Plaintiffs' reliance upon Defendant's misrepresentations are actionable.  *Italian Cowboys Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323 (Tex. 2011); *Formosa Plastics Corp. United States v. Presidio Eng'rs & Contrs.*, 960 S.W.2d at 48-49.

Furthermore, despite there being "red flags" as claimed by Defendant, Plaintiffs justifiably relied upon his continued misrepresentations that they would be paid.  This was not an arm's length transaction, but the three business partners shared a long personal friendship.  *See Dominguez v. Brackery Enterprises, Inc.*, 756 S.W.2d at 791 (explaining that when "there exists a long association in a business relationship, as well as a personal friendship, the first party is justified in placing confidence in the belief that the other party will act in his best interest.").  Plaintiffs were therefore justified in relying upon their friend's representations.

Additionally, the Stock Option Agreements did not contradict but rather supports that Defendant Riesen represented that Plaintiffs had to be silent partners and that he would share in half the profits of MSI.  Similarly, the Bonus Agreement is

---

representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury." *Italian Cowboys Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex. 2011).

further evidence that Defendant Riesen materially misrepresented that Plaintiffs would share in half proceeds of the eventual acquisition of MSI and induced Everington in signing it with the promise to pay at least an additional $4 million dollars. Defendant's misrepresentations continued after the executed agreement with a letter from Defendant Riesen's attorney to Plaintiffs. Due to Plaintiffs' long relationship with Defendant, they placed their trust in him that he would honor his commitment. *See Chalker v. Energy Partners,* 595 S.W.3d at 669 (emphasizing "[i]n Texas, a deal is, of course, a deal."). Concomitantly, the generic release in the Bonus Agreement does not exclude Plaintiffs' fraud claim. *Italian Cowboys Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 336 (Tex. 2011) (holding the merger clause in a lease did not bar Plaintiff's fraudulent inducement claim).

Again, the economic loss rule does not prevent Plaintiffs' tort claim. *Formosa Plastics Corp. United States v. Presidio Eng'rs & Contrs.*, 960 S.W.2d at 46 (explaining the economic loss rule is not a bar to a tort claim because "Texas law has long imposed a duty to abstain from inducing another to enter a contract through the use of fraudulent misrepresentations."). Plaintiffs' fraud claim is based on Defendant Riesen's promise to share in half of the proceeds of MSI's acquisition with no intention of performing that promise regardless of what "promise [was] later subsumed within [the Bonus Agreement.']" *Formosa Plastics Corp. United States v. Presidio Eng'rs & Contrs.*, 960 S.W.2d at 41. Defendant Riesen's actions of not providing Plaintiffs with their stock options, not informing them of the actual acquisition price of MSI, continual unfilled promises that he was going to show Plaintiffs the pertinent documents regarding the

19

acquisition coupled with his failure to pay the additional $4 million, is evidence of his intent to never perform his promises. *See Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986) (explaining a party's intent regarding representation "may be inferred from the party's subsequent acts after the representation [was] made."). Accordingly, Defendant's motion to dismiss is due to be denied.

**D.      Plaintiffs properly pled Breach of Contract Claims.**

Defendant's argument to dismiss the Plaintiffs' breach of contract claims is a lackluster attempt to dismiss their Amended Complaint to avoid liability for his actions.   Plaintiffs have clearly set forth Defendant's breaches and the motion to dismiss should be denied.

WHEREFORE, Plaintiffs respectfully request the Court to deny Defendant Timothy J. Riesen's Motion to Dismiss Complaint.

Respectfully Submitted,

SISCO-LAW

 /s/ Cynthia C. Sonnemann
Cynthia C. Sonnemann
csonnemann@sisco-law.com
Florida Bar No. 605581
Dale R. Sisco
dsisco@sisco-law.com
Florida Bar No. 559679
Peter A. Luccarelli, III
pluccarelli@sisco-law.com
Florida Bar No. 1030952
777 S. Harbour Island Blvd.
Suite 320
Tampa, FL  33602

(813) 224-0555
(813) 221-9736 Facsimile
*Counsel for the Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 28, 2024, a true and correct copy of the foregoing has been furnished via mail or filed electronically via CM/ECF to all counsel of record and to the following parties:

Erik Johanson, Esq.
Florida Bar No. 106417
Joseph R. Boyd, Esq.
Florida Bar No. 1039873
ERIK JOHANSON PLLC
3414 W Bay to Bay Blvd
Suite 300
Tampa, Florida 33629
(813) 210-9442
erik@johanson.law
jr@johanson.law
ecf@johanson.law
*Counsel for the Defendant*

  /s/ Cynthia C. Sonnemann
Attorney

22