**BONUS AGREEMENT**

This Bonus Agreement (this "Agreement") is made as of [_____], 2022, between Madison Springfield Inc., a Texas corporation (the "Company"), and International Advisory Services, an United Arab Emirates entity ("Recipient").

1.    Bonus Payment Amount.  In consideration of Recipient's service to the Company, the Company would like to offer to Recipient a one-time cash bonus of USD $2,000,000, subject to withholding pursuant to U.S. federal, state and local applicable laws or regulation and non-U.S. Taxes as may be required to be withheld pursuant to any applicable law or regulation (the foregoing, the "Bonus Payment Amount").

2.    Conditions to Bonus Payment.  Payment to Recipient of the Bonus Payment Amount is contingent upon (a) the acquisition of the Company (the "Transaction") by Ikaika, Inc. ("Buyer") under the Agreement and Plan of Merger dated on or around the date hereof, by and among the Company, Buyer, Buyer's parent ("Ultimate Parent") and other parties thereto, and (b) Recipient's execution and delivery of this Agreement to the Company no later than the date of closing of such acquisition (the "Closing").

3.    Recipient Acknowledgement.  Recipient acknowledges and agrees that (i) Recipient is not entitled to any other bonus or other similar payment in connection with the Transaction, (ii) the Company will not owe Recipient any fees, costs or expenses in connection with the payment of the Bonus Payment Amount, and (iii) Recipient understands that it (and not any Releasee as defined below) shall be solely responsible for its own tax liability that may arise in connection with the Bonus Payment Amount, and has not relied on any statements or representations of any Releasee for any legal and tax advice. Recipient represents and warrants that this Agreement has been duly executed and delivered by Recipient, constitutes a valid and binding obligation of Recipient, and assuming due authorization, execution and delivery by the other parties hereto, is enforceable against Recipient in accordance with its terms.

4.    Public Disclosure. Except as otherwise required by law, no disclosure (whether or not in response to an inquiry) of the existence or the subject matter of this Agreement or the Transaction shall be made, whether prior to or after the Closing, by Recipient or on Recipient's behalf unless approved by Buyer in writing prior to such disclosure.  Notwithstanding the preceding sentence, in the event that Recipient is required by law to make any such disclosure, Recipient may make such disclosure; provided that Recipient shall notify Buyer in writing prior to making such disclosure, shall use Recipient's commercially reasonable efforts to give Buyer an opportunity (as is reasonable under the circumstances) to comment on such disclosure, and shall make only such disclosure as Recipient is legally obligated to disclose.

5.    Release.  Conditioned upon, and effective as of, Recipient's receipt of the Bonus Payment Amount, Recipient, for and on behalf of itself and its predecessors, successors, affiliates, and assigns (collectively, the "Releasors") hereby knowingly, fully, unconditionally, completely and irrevocably forever releases and discharges Ultimate Parent, Buyer, the Company, and each of their respective current and former affiliates (together, the "Released Companies"), and each of the Released Companies' respective past or present officers, directors, stockholders, partners, members, subsidiaries, affiliates, agents, advisors, representatives and employees, and each of their respective predecessors, successors, heirs, executors, administrators, beneficiaries, legatees and assigns (collectively, the "Releasees"), from, and agrees not to sue any of the Releasees with respect to, any and all claims, actions, causes of action, suits, debts, dues, sums of money, accounts, reckonings, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, expenses, executions, affirmative defenses, demands and other obligations or liabilities whatsoever, in law or equity, whether known or unknown, past or present, asserted or unasserted, suspected or unsuspected, fixed or contingent, which Recipient or any of the Releasors ever had, now have or may ever have against any of the Releasees, in each case to the extent based on, arising out of, or resulting from or relating, directly or indirectly, to the negotiation, execution and delivery of this Agreement or any amounts payable by the Company or its affiliates.

**EXHIBIT "A"**

6.    <u>Entire Agreement</u>. This Agreement sets forth the entire agreement and understanding between the parties relating to the matter comprising the subject of this Agreement and supersedes any and all prior agreements, arrangements and understandings, written or oral, between Recipient and the Company with respect to the subject matter hereof.

7.    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, regardless of the laws that might otherwise govern under applicable principles of conflicts of laws thereof.

*(Signature Page Follows)*

IN WITNESS WHEREOF, the undersigned has executed and delivered this Bonus Agreement as of the date first set forth above.

**COMPANY**

**Madison Springfield Inc.**

By: _____
Name:   Timothy Riesen
Title:    Chief Executive Officer

**RECIPIENT**

**International Advisory Services**

By:
Name:   Alexis Everington
Title:    Director of Operations