UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALEXIS EVERINGTON and
RICHARD WHITE,

          Plaintiffs,

v.                             Case No. 8:23-cv-2386-JLB-NHA

TIMOTHY J. RIESEN,

          Defendant.

_____/

## ORDER

Before the Court are Plaintiffs' Motion to Compel Discovery Documents (Doc. 91) and Defendant's Motion to Compel Discovery Responses and for Sanctions[1] (Doc. 93). I grant each motion in part.

### I.    Background

This case concerns a dispute over the sale of a corporation, Madison Springfield, Inc. ("MSI"). Plaintiffs Alexis Everington and Richard White bring claims of breach of fiduciary duty, breach of agreements, fraudulent misrepresentation, and unjust enrichment against Defendant Timothy Riesen,

---

[1] Defendant's Motion also includes a request to re-open discovery for the purpose of conducting one additional deposition. Doc. 93, p. 11. In light of the Court's subsequent order extending the discovery deadline to January 16, 2026 (Doc. 99), and Plaintiff's statement that they do not oppose re-opening discovery for this purpose (Doc. 97, p. 11), that request is now moot.

alleging that Defendant's acts and omissions surrounding his sale of MSI
violated oral partnership agreements and written stock option agreements
between Defendant and Plaintiffs. Amend. Compl., Doc. 82. Specifically,
Plaintiffs allege that Defendant is liable to them for his failure to consult them
prior to sale of MSI to Premise Data Corporation and for his refusal to allow
Plaintiffs to exercise their alleged stock options following the sale. *Id.* ¶¶ 6-11.
Defendant brings counterclaims for declaratory relief that Plaintiffs had no
enforceable interests in MSI or its proceeds, and, in the alternative,
counterclaims for equitable accounting, unjust enrichment, and rescission.
Answer, Doc. 85, pp. 68-77.

### a. MSI's Disputed Status and Sale

Plaintiffs allege that Defendant's sale of MSI and retention of its
proceeds amount to a usurpation of a joint venture. By their telling, Plaintiffs
Everington and White established an informal joint venture with their friend
and colleague, Defendant Riesen, wherein the three men would secure and
execute defense industry contracts through two companies: MSI, a US
company founded and owned by Defendant, the sole American citizen among
the three, and International Advisory Services ("IAS") founded and managed
by Plaintiffs in the United Arab Emirates. *Id.* ¶¶ 20-23. Plaintiffs explain that
they allowed Riesen to "formally own" MSI in its entirety to better position the
company to secure US government contracts, but that the three men agreed to

be and functioned as partners in MSI, always with an understanding that Plaintiffs would eventually be compensated as such. *Id.* ¶¶ 23-27. They claim that IAS functioned as a vehicle through which Plaintiffs were paid to carry out contracts that MSI secured, but that Plaintiffs also obtained formal ownership interests in MSI through stock option agreements executed in 2013 and 2016, with the latter agreement granting Plaintiffs, collectively, a 50% interest in MSI's stock. *Id.* ¶¶ 31-36, 40. Plaintiffs also claim that they became official employees of MSI pursuant to offers of employment signed by both Plaintiffs, as well as language in the stock option agreements that identified them as such. *Id.* ¶¶ 38, 41.

In sharp contrast to Plaintiff's characterizations of MSI's status, Defendant claims that he alone owned and controlled MSI, and that IAS was merely one of several subcontractors with which MSI worked. Answer, Doc. 85 ¶ 31; Counterclaim, Doc. 85, ¶¶ 9-12. Defendant asserts that all employment offers and stock option agreements with Plaintiffs were created for the purpose of, and conditioned upon, MSI securing certain government contracts which it never successfully secured.[2] Counterclaim, Doc. 85, ¶¶ 9-12. Defendant also

---

[2] Defendant explains that the contracts in question required MSI to perform at least 51% of the contracted services itself, and that the plans to hire Plaintiffs and MSI employees were made to allow Plaintiffs to substantially assist MSI in completing these contracts while allowing MSI to meet the threshold. Counterclaim, Doc. 85, ¶ 13.

emphasizes that MSI and IAS executed a "Bonus Agreement" before MSI was sold, which he claims (1) allowed Plaintiffs to be (gratuitously) compensated for MSI's sale to the tune of $2 million, and (2) precludes Plaintiffs claims against him due to its release-of-claims clause applicable to IAS and its affiliates. *Id.* ¶ 27. Finally, Defendant alleges that, while he initially expected to personally earn $12 million from the MSI sale, he later discovered that the stock he received in the transaction was "effectively worthless," causing him to earn only $442,659.19 after closing the deal – substantially less than the $2 million received by Plaintiffs pursuant to the Bonus Agreement. *Id.* 28-31.

In short, Plaintiffs and Defendant agree that MSI and IAS worked together frequently, that Defendant independently agreed to sell MSI without Plaintiffs' input or consent, that Defendant did not allow Plaintiffs to exercise any alleged stock options when MSI was sold, and that Plaintiffs were nonetheless compensated when MSI was sold in the form of the $2 million bonus. In recent filings, both parties have also acknowledged that Defendant sued MSI's purchaser for securities fraud after the transaction was completed and that the case resulted in a settlement, though the parties dispute whether that lawsuit is relevant to this case. *See* Doc. 91, p. 10; Doc. 98 pp. 5-6.

The parties disagree as to whether Plaintiffs were partners and/or employees of MSI, and whether, in any case, Plaintiffs had enforceable stock options in MSI. Plaintiffs also allege that Defendant's characterization of the

total compensation he received from the sale is inaccurate. *See* Counterclaim, Doc. 85, ¶¶ 35-36; Doc. 91, pp. 6, 10-11. Because Defendant claims that Plaintiffs in fact received *more* from the sale than he did, he brings counter-claims for rescission, equitable accounting, and unjust enrichment, arguing that, if Plaintiffs are found to have an enforceable right to 50% of MSI's value, then Defendant is entitled to damages to account for the amount they received in bonuses and other compensation which allegedly exceeds that amount. Doc. 85, pp. 73-77.

### b. Procedural History and The Motions to Compel

Although this case has been pending since 2023, Plaintiffs' first amended complaint was dismissed without prejudice on August 10, 2025. Doc. 79. Plaintiffs filed their second amended complaint on August 26, 2025. Doc. 82. Defendant first brought counterclaims in his September 24, 2025 answer to the second amended complaint. Doc. 85. Both parties have sought additional discovery from each other since filing their latest pleadings; and both parties assert that Defendant's counterclaims expanded the scope of discovery. *See* Doc. 91, p. 2 ("Defendant's counterclaims have expanded the litigation in this matter, requiring pertinent discovery to be had by Plaintiffs."); Doc. 92, p. 2 ("The extended delay . . . inherently prohibited the Defendant from propounding any discovery related to his Counterclaim and the Plaintiffs' Answer and Affirmative Defenses thereto.")

During the initial rounds of discovery, the Court entered a Stipulated Protective and Claw-Back Order (Doc. 77) (the "Protective Order"). The Protective Order was drafted and agreed to by both parties (Doc. 91, p. 9) and requires (among other things) that all "confidential" discovery materials in this case be disclosed only to the parties and their counsel, the Court and its staff, mediators, experts, and litigation staff. Doc. 77, pp. 17-19.

Plaintiffs and Defendant filed their respective motions to compel discovery on November 17. Docs. 91, 93. Pursuant to the Court's order for expedited briefing (Doc. 95), each party responded to the other's motion on November 24. Docs. 97, 98.

i. Plaintiffs' Motion

Plaintiffs move to compel Defendant to produce documents responsive to three Requests for Production: Requests 12, 13, and 14, which seek, respectively, Plaintiff's personal tax documents for the years 2019-2024,[3] documents filed in Defendant's recently settled case against MSI's purchaser, and the settlement agreement from that case.[4]

---

[3] Request 12 requests tax documents through 2025, but Plaintiffs concede that Defendant has not yet completed his 2025 tax returns, and thus only seek tax documents through 2024. Doc. 91, p. 6.

[4] The full Requests ask that Defendant:

12. Produce all documents relating to any taxes You filed including, without limitation, all documents that you filed in support

First, pursuant to Request 12, Plaintiffs seek all of Defendant's personal tax documents from the years 2019 to 2024 in order to verify how much Defendant earned and/or lost during the sale of MSI and the litigation that followed, and in order to investigate Defendant's claims about the financial status of MSI leading up to the sale. Doc. 91, pp. 6-7. Plaintiffs explain that Defendant has only produced one page of personal tax documents, from his 2023 filings. *Id.*, p. 5. They assert that the rest of Defendant's tax information is relevant to substantiate Plaintiffs' claims that Defendant violated fiduciary duties by misleading them before and during the MSI sale, to calculate their own damages, and to investigate and defend against Defendant's counterclaims for damages (which rely on Defendant's assertion that he received less from the MSI sale than did Plaintiffs). *Id.*, pp. 4-5. Plaintiffs assure the Court that they do not object to Plaintiff redacting personal information from the tax returns. *Id.*, p. 8.

---

thereof of or that You provided to any person who provided accounting or tax services to You or on your behalf from the time period for the years of 2019 through 2025.

13. Produce all documents filed in Mr. Riesen's case against [the purchaser] in the United States District Court of the District of Delaware with case number: 1:25-cv-00355-CFC.

14. Produce all settlement agreements in Mr. Riesen's case against [purchaser], in the United States District Court of the District of Delaware with case number: 1:25-cv-00355-CFC.

Doc. 91, pp. 5, 8-9.

Defendant responds that he should not be compelled to produce documents responsive to Request 12, because he has produced MSI's tax documents and the detailed financial documents that MSI provided to its purchaser during the sale, from which Plaintiffs could deduce MSI's worth and his own MSI earnings. Doc. 98, pp. 4-5. Thus, Defendant argues, Plaintiffs' request for his personal returns is simply "calculated to harass" him. *Id.* He explains that his personal returns contain "highly sensitive information" (such as "spousal income, medical deductions, and unrelated investments") and are irrelevant. *Id.*, pp. 4-5. Defendant does not explain how his privacy concerns would persist if he were allowed to produce redated tax returns.

Second, grouping Requests 13 and 14 together, Plaintiffs move the Court to compel Defendant to produce documents filed in Defendant's case against MSI's purchaser, *Riesen v. Premise*, 1:25-cv-00355-CFC (D. Del.), as well as the settlement agreement(s) that resolved that case. Doc. 91, pp. 8-9. Plaintiffs explain that they cannot themselves access such documents because the *Premise* docket is sealed, and Defendant has refused to turn over any filings from the case or the settlement agreement. *Id.* Plaintiffs argue that any confidentiality concerns are addressed by the parties' Protective Order that limits dissemination of confidential materials and which Order Defendant's attorneys themselves drafted in anticipation of producing confidential materials (*Id.*, p. 9; *see* Doc. 77), Plaintiffs again argue that documents

responsive to these Requests are relevant to their own calculation of damages, as well as to Defendant's claims that he is entitled to damages to make up the difference between what he ultimately received from the MSI sale and what Plaintiffs received. Doc. 91, p. 10.

Characterizing Requests 13 and 14 as requests for "judicial records" or to unseal the *Premise* case, Defendant argues that Plaintiff's request is an improper "collateral attack" on the Delaware Court's sealing order and that requiring Defendant to himself move that court to unseal the case records would be unduly burdensome. Doc. 98, pp. 6-7. Defendant also insists that filings from the *Premise* case are irrelevant to this action because the *Premise* case involved "factually distinct" issues from this one. *Id.*, p. 6. He explains that the present case revolves around only whether Plaintiffs had any ownership interest in MSI, while the *Premise* case revolved around representations made to Defendant during the sale of MSI. Doc. 98, p. 6.

As for Request 14, Defendant asserts that the settlement with Premise, which includes a confidentiality clause, is also irrelevant because the amount of a settlement reflects many factors separate and apart from the value of a plaintiff's claim, so the amount he received from Premise cannot be characterized as money he earned from the sale of MSI. *Id.*, p. 8. Thus, describing the relevance of the settlement agreement as "marginal at best," Defendant argues that production of such marginally relevant and confidential

9

material would be disproportionate to the needs of the case and would undermine the public policy of allowing for confidential settlements. *Id.*, pp. 8-9.

### ii. Defendant's Motion

Defendant seeks to compel Plaintiffs to produce four categories of information: answers to eight of Defendant's interrogatories; clearer designations of which produced documents respond to which of Defendant's requests for production; documents responsive to seventeen of Defendant's requests for production; and the deposition of an additional witness.

It appears one of these issues has been narrowed, and another resolved entirely since the Defendant filed his motion. First, because Plaintiffs agree to supplement their responses to seven of the interrogatories at issue, only one interrogatory response requires the Court's review. Doc. 97, p. 5; *see* Conferral Email, Doc. 97-4. Second, because Plaintiffs do not oppose the additional deposition (*see* Doc. 97, p. 11), and because discovery has been re-opened to accommodate it (*see* Doc. 99) the Court need not address the motion as to the deposition. The Court need only decide the motion as to Plaintiff's response to Interrogatory 15, Plaintiff's identification of documents responsive to Defendant's requests, and Plaintiff's responses to the Defendant's requests for production.

10

First, Defendant argues that Plaintiffs did not sufficiently respond to Interrogatory 15, which requests a detailed calculation of the damages Plaintiffs seek.[5] Plaintiffs answered that they seek at least two million dollars each in damages but did not yet have sufficient discovery to further calculate the amount, which Defendant contends is an insufficient and evasive answer. Doc. 93, p. 8. Defendant argues that Plaintiff's answer to Interrogatory 15 violates their duty to respond to the specific interrogatory and their duty under Rule 26 to provide damages computations in their initial disclosures. *Id.* He explains these violations prejudice his ability to prosecute his own unjust enrichment claim. *Id.* Plaintiffs respond that they have no objection to answering Interrogatory 15 as fully as they are able, but that Defendant's refusal to produce the Premise-MSI settlement agreement and his own tax returns has rendered them unable to fully calculate their requested damages. Doc. 97, pp. 5-6.

Second, Defendant moves to compel Plaintiffs to supplement all of their responses to his requests for production with answers that either (1) identify

---

[5] Interrogatory 15 reads in full:

15. For **each** category of damages that you claim you are entitled to recover from Defendant in the Action (a) state the amount of damages you claim you are entitled to recover; (b) Identify and Describe in full detail the factual basis upon which you rely to support your claim for such damages; and (c) specify and describe the precise method that you used to calculate or arrive at the amount of damages you claim you are entitled to recover in this Action. Doc. 93-1, p. 14.

by Bates-stamp numbers or ranges identifying the specific documents that respond to each request, or (2) state that they have no responsive documents if that is the case. Doc. 93, pp. 8-9. Defendant complains that, because several of Plaintiffs' responses to the requests cross-reference answers to other requests, claiming that the same documents are responsive to multiple questions, he is unable to decipher which documents Plaintiffs rely on "in support of certain allegations or claims." *Id.*, p. 9. Plaintiffs respond that their responses already include Bates numbers and are sufficiently clear and organized. Doc. 97, p. 3.

Third and finally, Defendant identifies seventeen requests for production—Requests 10-12, 18-19, 21-24, 26-28, 30, 34-36, 44—to which Plaintiff has objected, and moves the Court to compel Plaintiff to produce responsive documents. Doc. 93, p. 10. Defendant groups these requests into five categories: (1) requests for documents relating to IAS's formation and compensation of Plaintiffs (Requests 10-12); (2) requests for communications Plaintiffs had with anyone relating to Defendant's sale of MSI and the compensation they expected therefrom (Requests 21-23, 26-28, 30); (3) communications Plaintiffs had with anyone about the Bonus Agreement (Request 24); (4) communications Plaintiffs had with anyone about their MSI stock options and their role in establishing MSI (Requests 18-19, 34-36); and (5) Plaintiffs' tax documents (Request 44). *Id.*

Defendant does not provide specific arguments for the relevance of documents responsive to each of these categories, but does argue that IAS's documents are relevant to this case because "[t]he entire dispute centers around the legal and factual relationship between Plaintiffs, Defendant, MSI, and IAS." *Id.*, p. 3. Defendant explains that resolving the case will require a determination of the precise nature of the relationship between MSI and IAS. He further asserts that his counterclaims, which seek to rescind the Bonus Agreement between MSI and IAS and its $2 million payment to Plaintiffs (if Defendant does not prevail on his declaratory judgment counterclaims), also require inquiry into IAS's internal operations to support his accusation that IAS fraudulently induced him to agree to provide bonuses to Plaintiffs without ever intending to bind Plaintiffs to the contract's release-of-claims provision. *Id.*, pp. 3-4.

Plaintiffs offer several responses to these arguments.

Plaintiffs claim that IAS's corporate documents and Plaintiffs' tax documents are irrelevant to the litigation. Plaintiffs deny that that IAS is "central" to the case, arguing that only MSI's structure and operations are relevant to the dispute, and that IAS is "merely a shell corporation" used to

receive payments from MSI.[6] *Id.*, pp. 4, 8. Plaintiffs assert that their tax documents are neither relevant nor proportional to the needs of the case, noting that they have never disputed how much they received in payments and bonuses from MSI, and that Defendant does not explain in his motion why Plaintiffs' taxes are relevant to either side's claims or defenses.[7] *Id.*, pp. 9-10.

As to the communications requested (about the sale of MSI, the Bonus Agreements, and their stock options/role in MSI), Plaintiffs assert they have already produced all non-privileged documents responsive to the requests for Plaintiffs' communications. Doc. 97, pp. 7-8; *see also* Doc. 97-4 (conferral email from Plaintiffs' counsel stating that "all [responsive] communications were produced last year" except privileged communications). They also claim that Plaintiff White lost most of the responsive communications when he lost access to MSI's communication system. Doc. 97, p. 7. And finally, Plaintiffs explain that they objected to the production of certain responsive communications based on attorney-client privilege, as documented on the privilege log produced with their responses (*see* Doc. 97-3), and they objected to the production of

---

[6] Plaintiffs also briefly advance an argument that this Court "cannot order IAS to produce documents" because it lacks jurisdiction over IAS as a foreign corporation with no ties to the United States. Doc. 97, p. Even assuming this is correct, Plaintiffs have never contested that the Court has jurisdiction to compel *them* to produce documents, including those in their possession regarding IAS.

[7] Plaintiffs also explain that Plaintiff Everington has no responsive documents to produce because he lives in Monaco and does not pay taxes.

"possible" communications with Plaintiffs spouses as protected by the spousal privilege. Doc. 97, pp. 7-8.

## II.    Applicable Law

In applying the law and rules governing discovery to the facts of a case, the court "has broad discretion to compel or deny discovery." *United States v. Cuya*, 964 F.3d 969, 970 (11th Cir. 2020) (citing *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306–07 (11th Cir. 2011)).

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). The scope of discovery is construed broadly, "to empower parties 'to obtain the fullest possible knowledge of the issues and facts before trial.'" *Gulledge v. DePuy Orthopaedics, Inc.*, 699 F. Supp. 3d 1261 (S.D. Ala. 2023) (quoting *Hickman v. Taylor*, 329 U.S. 495, 501, 67 S.Ct. 385, 91 L.Ed. 451 (1947)). However, "[w]here a significant amount of discovery has been obtained, and it appears that further discovery would not be helpful in resolving the issues, a request for further discovery is properly denied." *Rollins v. Cone Distrib., Inc.*, 710 F. App'x 814, 819 (11th Cir. 2017) (unpublished) (quoting *Iraola & CIA, S.A. v. Kimberly–Clark Corp.*, 325 F.3d 1274, 1286 (11th Cir. 2003)).

Parties may use requests for production to obtain from each other discovery materials "in the responding party's possession, custody, or control."

FED. R. CIV. P. 34(a)(1). When a party refuses to comply partially or completely with a request for production, the requesting party may move the court to compel the refusing party to fully respond to the request. FED. R. CIV. P. 37(a)(3)(B). The refusing party may object to production by claiming that the material is irrelevant or privileged, or by stating grounds identified in Rule 26(c) as bases for a protective order. 8B WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 2213 Response to Request (3d. ed. 1998) (September 2025 update) ("Thus the responding party may object that to allow inspection would be unduly expensive or oppressive or would disclose confidential commercial information or would be otherwise objectionable.")

## III.    Discussion

### a.    Plaintiff's Motion to Compel (Doc. 91)

#### i.    Request for Production 12

Plaintiffs move the Court to compel Defendant to produce his tax documents from 2019 to 2024, as sought in Request for Production 12. They argue that Defendant's tax returns are relevant to their breach of fiduciary duty claims as well as to their calculation of damages and their defenses against Defendant's damages claims. Doc. 91, pp. 4-7. Defendant responds that his taxes are irrelevant given that he already provided extensive tax and financial information for MSI. Doc. 98, pp. 4-5. He also notes that the request is unduly burdensome and harassing, because his tax documents contain

16

sensitive personal information. *Id.* Plaintiffs propose that Defendant protect any highly personal information by redacting the tax documents he produces. Doc. 91, p. 8.

I find that Defendant's tax documents are relevant to the parties' damages claims. Aside from the question of whether Plaintiffs were entitled to participate in and profit from the sale of MSI, the precise nature of the proceeds from that sale are also contested and relevant both to Plaintiff's damages calculations and to Defendant's unjust enrichment claims should Plaintiffs prevail on their argument that they should have been proportionally compensated for the sale.

Additionally, while Defendant's tax documents contain private, sensitive information that is irrelevant to this proceeding, Defendant does not allege that such information is privileged, and Eleventh Circuit and Texas precedent both recognize that personal tax documents are discoverable when relevant.[8]

---

[8] The parties cite to Texas law in their briefs, as the Court has determined that Texas law governs Plaintiffs' predominant claim. Generally, "it is federal law, and not state law, that controls discovery in diversity actions when a federal Rule is on point." *Bearint ex rel. Bearint v. Dorell Juvenile Group, Inc.*, 389 F.3d 1339, 1353 (11th Cir. 2004). On the other hand, "federal courts sitting in diversity are required to apply state law regarding the attorney-client privilege as well as other evidentiary privileges." *Smith v. USAA Cas. Ins. Co.*, 658 F. Supp. 3d 1054, 1058 (N.D. Fla. 2023) (citing FED. R. EVID. 501). The Court looks to both federal and Texas law to establish that discovery of tax documents is not precluded by federal law and that such discovery is not protected by a Texas evidentiary privilege.

*See Maddow v. Procter & Gamble Co., Inc.*, 107 F.3d 846, 853 (11th Cir. 1997) (upholding a district court's order compelling a party to produce relevant tax returns during discovery); *El Centro del Barrio, Inc. v. Barlow*, 894 S.W.2d 775, 779 (Tex. App. 1994) ("Generally, income tax returns are subject to discovery to the extent that their relevancy and materiality to the issues in the lawsuit are shown.") (quoting *Maresca v. Marks*, 362 S.W.2d 299, 300 (Tex.1962)). Moreover, Defendant's privacy interests may be protected by redacting private and irrelevant information, a request to which Plaintiffs do not object. *See* Doc. 91, p. 8.

Plaintiffs' motion to compel a response to Request for Production 12 is granted. Defendant may redact highly sensitive information that does not relate in any way to MSI.

### ii.  Requests for Production 13 and 14

In Requests for Production 13 and 14, Plaintiffs seek documents filed in *Riesen v. Premise*, a sealed and closed federal case initiated by Defendant against MSI's purchaser for fraudulent inducement of the sale of MSI, and the settlement agreement(s) that resolved the litigation. Doc. 91, pp. 8-9. Plaintiffs assert that the filings and the outcome of this lawsuit are relevant to their claims for damages because Defendant claims that he ultimately earned less from the sale than did Plaintiffs, and Plaintiffs argue that any payout

18

Defendant received from the lawsuit should be counted as proceeds from the sale of MSI. *Id.*, p. 10.

As to the request for court records (Request for Production 13), Defendant responds that (1) moving in this case to compel production of the court records in *Premise* constitutes a "collateral attack" on the District of Delaware court's order sealing the *Premise* case, and (2) the *Premise* lawsuit is irrelevant because it was a "factually distinct"—it dealt with Premise's representations inducing the sale of MSI, whereas this case deals with the ownership and obligations of MSI. Doc. 98, pp. 6-7.

As to the request for the settlement agreement (Request for Production 14), Defendant argues that (1) the agreement contains a confidentiality provision, which production would violate, and (2) a settlement payment would not be a fair measurement of the worth of MSI; rather, settlement agreements reflect evaluation of a number of factors, including litigation costs and risks. *Id.*, pp. 8-9. In response to Defendant's confidentiality arguments, Plaintiffs point out that the Court has already entered a stipulated Protective Order which provides specific protections for confidential information exchanged during discovery. Doc. 91, p. 9, *see* Doc. 77.

The Court finds that Plaintiffs have surpassed the low bar of demonstrating that the documents filed in the Premise case are relevant here. Although the Premise litigation was a "factually distinct" dispute from the

present case, it seems the lawsuit centered around the conditions of MSI's sale, including what Defendant received in return, which are issues central to the questions in this case.

And, while Defendant characterizes Request 13 as a demand that the sealed Delaware case be unsealed, a reasonable interpretation of Plaintiffs' request requires no such thing. The request seeks "documents filed" in the case. Within the context of the well-known limitation in the Federal Rules that parties can only request production of documents "in the responding party's possession, custody, or control," the request is most naturally read to request documents filed in the *Premise* case that are currently in the Defendant's possession or control.

Of course, the fact that those documents were filed under seal in litigation does not mean that they are protected from dissemination to anyone not involved in the case, even when requested pursuant to a lawful discovery request. Precedent in the Third Circuit (the federal circuit in which the *Premise* case was litigated) requires a showing of good cause in motions to seal in order to overcome the "strong presumption in favor of *public accessibility*" to "*court records*." *LEAP Sys., Inc. v. MoneyTrax, Inc.*, 638 F.3d 216, 221 (3d Cir. 2011) (emphasis added). Similarly, courts in the District of Delaware (the district in which the *Premise* case was litigated) recognize filing documents under seal as the "closing of judicial records to the public." *In re EWE*

*Gasspeicher GmbH*, 612 F. Supp. 3d 402 (D. Del. 2020). Thus, the reasons for sealing a court docket-—preventing broad *public* access to the filings—is not necessarily implicated here, where the documents are due to be exchanged only between the parties to this litigation.

Further, the Protective Order governing discovery in this case requires that "discovery material designated as confidential shall not . . . be disclosed to any entity other than" the parties, their attorneys, the Court, and others directly involved in this case. Doc. 77, pp. 17-20. This mandate further ensures that the purposes behind the *Premise* court's sealing order will not be frustrated by Defendant's production pursuant to Request 13.

And, to the extent the material is relevant and not privileged, it should be produced. When a party designates discovery material as confidential, the default approach is to place safeguards on the exchange of that material rather than to permit the party to withhold the material entirely. *See Fed. Open Mkt. Comm. of Fed. Rsrv. Sys. v. Merrill*, 443 U.S. 340, 362 n. 24, 99 S. Ct. 2800, 2813, 61 L. Ed. 2d 587 (1979) ("Actually, orders forbidding any disclosure of trade secrets or confidential commercial information are rare. More commonly, the trial court will enter a protective order restricting disclosure to counsel, or to the parties.") (citations omitted).

Relatedly, the Court notes that the Protective Order – which was stipulated to by Defendant -- mandates that, "[e]xcept on Privilege Grounds,

21

no Party may withhold information from discovery on the grounds that it
requires protection greater than that afforded by this Order unless the party
moves for an order providing such additional, special protection." Doc. 77, p. 5.
Defendant has not argued that any federal or state privilege applies to the
documents. He has also not requested additional protections for discovery
produced under Request 13, but instead has withheld production altogether.

Because Plaintiffs seek relevant, non-privileged discovery, and because
the Protective Order which is already in effect provides sufficient protections
for any confidential material which is due to be produced, Plaintiff's motion to
compel is granted as to Request for Production 13

Similar considerations apply to the confidential nature of the settlement
agreement sought by Request for Production 14 seeks: Defendant asserts that
the agreement is confidential but not that it is privileged; and because it is
confidential, Defendant would doubtlessly only produce the agreement, if
compelled to do so, pursuant to the provisions of the Protective Order. On the
other hand, the Court finds some merit in Defendant's contention that "[p]ublic
policy strongly favors the resolution of disputes," and "compelling production
of a third-party settlement undermines the reliance parties place on
confidentiality clauses when settling litigation." Doc. 98, pp. 8-9. Unlike the
concerns animating the *Premise* court's sealing order, confidentiality
provisions are usually included in contracts with the purpose of preventing *any*

22

further disclosure of the contents of the agreement, not just to shield the document from *public* view.

The relevance of the settlement agreement is also less clear. Plaintiff's arguments for the relevance of the settlement agreement —that it factors into their damages calculations—applies only to any payment to Defendant pursuant to the settlement agreement, not to any other details of the agreement itself. And as Defendant rightly notes, the size of a settlement does not directly represent the value of a plaintiff's claim. *See* Doc. 98, p. 8.

Neither the Federal Rules nor binding precedent preclude orders compelling production of confidential agreements, but the Eleventh Circuit's only direct discussion of the topic is in a case approving a district court's finding that a confidential settlement agreement was irrelevant to the case and production of it thus would not be compelled. *See Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270, 1280 (11th Cir. 2002). So, while private parties' agreement to a confidentiality cause in a private contract certainly does not mean that a court cannot order one of those parties to produce the contract, it is also reasonable to weigh those parties' interests in enforcing that confidentiality against the relevance of the confidential documents. *See* FED. R. CIV. P. 26(b)(1) (defining the scope of discovery with reference to proportionality to a case's needs and its burden as compared to its likely benefit).

23

With these considerations in mind, I conclude that only the monetary value provided to the Defendant in the settlement agreement must be produced. It is unclear whether that amount should or will factor into Plaintiffs' damages calculation, but that is ultimately a merits question that should not be adjudicated in the context of a discovery dispute. Construing the scope of discovery broadly, as I must, while also giving due consideration to the agreement's confidential nature, Plaintiff's motion to compel production responsive to Request 14 is granted, to the extent that Defendant must disclose to Plaintiffs the amount of the settlement, and it is otherwise denied.

### b. Defendant's Motion to Compel (Doc. 93)

#### i. Interrogatory 15

Defendant moves to compel a full answer to Interrogatory 15, which seeks an explanation and calculation of Plaintiffs' claimed damages. Plaintiffs' answer states only that they seek at least two million dollars and declines to further specify their calculation. Doc 93-1, p. 14. Defendant rightly notes that Plaintiffs must answer this question, not only because it is responsive to a properly-served interrogatory seeking relevant information, but because each party is required under the Federal rules to produce a computation of their damages as part of their initial disclosures. *See* Fed. R. Civ. P. 26(a)(1)(iii). Plaintiffs respond that they do not object to this interrogatory as such, but that they require additional discovery from Defendant—specifically, discovery

24

responsive to Requests 12 through 14, discussed above—to determine what they believe they are owed. Doc. 97, pp. 5-6.

"Rule 26 requires a party to include in its initial discovery disclosures 'a computation of each category of damages claimed' and to supplement those disclosures promptly if they are incomplete or incorrect." *Circuitronix, LLC v. Kinwong Elec. (Hong Kong) Co.*, 993 F.3d 1299, 1307 (11th Cir. 2021). The requirement that each category of damages be both identified and calculated is strictly enforced because it is essential to the opposing party's ability to prepare for trial. *See Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1221–22 (11th Cir. 2010) (upholding a district court's imposition of sanctions on a plaintiff for failure to identify a category of damages until the eve of trial and to ever provide a calculation of that category of damages).

Here, Plaintiffs' answer to Interrogatory 15 neither identifies distinct categories of damages nor provides any calculations. As explained in Sections III(a)-(b), *supra*, the Court agrees with Plaintiffs that they are entitled to more discovery which will likely include information relevant to their damages calculations. But that need is a basis on which to supplement an incomplete damages estimation, not a basis on which to provide only a vague and cursory answer. Thus, Defendant's motion to compel answers from Plaintiffs which accord with the specific requirements in the Federal Rules is due to be granted. Plaintiffs must immediately supplement their answer to Interrogatory 15 with

an explanation of each category of damages they intend to pursue, a formula for how they intend to calculate each category, and, if they have not yet receive the information, an explanation of how they expect the outstanding discovery from Defendant will be used in their calculations. Additionally, Plaintiffs must supplement that answer with a complete calculation of damages within a reasonable time after receiving the discovery which this order compels Defendant to produce in (partial) response to Requests 12-14.

> ### ii. Clearer Explanations of Which Produced Materials Correspond to Which Requests for Production

Defendant moves to compel Plaintiffs to supplement their responses to his requests for production with clear descriptions of which produced documents respond to each request. Doc. 97, pp. 8-9. Indeed, the Federal Rules require that parties producing documents or things during discovery must either "produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request." FED. R. CIV. P. 34(b)(2)(E)(i).

Plaintiffs have sufficiently complied with their obligation. Defendant states that he cannot determine which produced materials correspond to which requests for production, but that difficulty cannot fairly be attributed to the form of Plaintiffs' production. As shown by an exhibit attached to Defendant's motion, Plaintiffs used Bates numbers to organize and designate the

documents they produced, and they provided substantial, distinct answers for each of the questions they answered. *See generally* Doc. 93-2. Although Plaintiffs' answers often reference their answers to the first four requests, they invariably do so while also (1) objecting that the question is repetitive, and/or (2) providing additional Bates-number designations to more documents after stating that their prior answers are also responsive. Because Defendant fashions this aspect of his motion as a general objection to the form of Plaintiffs' response, and does not specify why responses to specific requests were insufficient or misleading, the Court declines to undertake this analysis on Defendant's behalf.

Defendant's request to compel Plaintiffs to more specifically designate responsive documents is denied.

        iii.  Requests for Production 10-12, 18-19, 21-24, 26-28, 30, 34-36, 44

In addition to objecting to the fashion in which Plaintiffs responded, Defendant moves to compel Plaintiffs to produce documents responsive to seventeen requests for production. Doc. 93, p. 10. Defendant groups the requests into five categories, three of which comprise requests for Plaintiffs' communications. I address this aspect of Defendant's motion in three parts, grouping the communication-related requests into one category.

A. Documents Relating to IAS's Formation and its Compensation of Plaintiffs (Requests 10-12)

Plaintiffs object that documents relating to IAS's business operations are irrelevant to this case, arguing that "IAS is not at the heart of this dispute." Doc. 97, p. 8. They also suggest that there is little to discover here because "IAS is a shell corporation with no employees or offices." *Id.* Defendant, on the other hand, asserts that "the identity, structure, control, finances, and operations of IAS . . . are the central, dispositive issues" on which both parties' claims and defenses turn. Doc. 93, p. 4.

Plaintiffs correctly observes that MSI's structure and operations—not IAS's—are at "the heart" of this dispute. But the broad scope of discovery reaches further than the topics which constitute the "heart" of a case. Rule 26 provides that the right to discovery extends to "*any* nonprivileged matter that is *relevant* to any party's claim or defense." (emphasis added). IAS's formation, finances, and internal operations are relevant, because they bear on IAS's relationship (and Plaintiffs' relationship) to MSI. For example, the Defendant asserts that IAS was merely a subcontractor for MSI while Plaintiffs' assert IAS was merely a shell company for payments to MSI. IAS's documents are likely relevant to those competing claims.

Because Plaintiff's objection to the requests (relevance) is overcome, Defendant's motion to compel responses to Requests for Production 10, 11, and 12 is granted.

> B. Plaintiffs' Communications with Others and Each Other About the MSI Sale, the Bonus Agreement, and MSI Stock Options (Requests 18-19, 21-24, 26-28, 30, 34-36)

The bulk of the responsive documents that Defendant seeks are Plaintiffs' communications about various issues relevant to the case. Plaintiffs do not object to the requests but argue that they have already produced the communications,[9] that they do not have the communications, or that the communications are privileged. Doc. 97, pp. 7-9. The Court is powerless to compel Plaintiffs to produce what they do not have and need not compel them to produce what they have provided, so the Court addresses only Plaintiffs' privilege objections.

When a party withholds relevant communications from discovery based on a claim of privilege, it must "describe the nature of the . . . communications . . . not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess

---

[9] Plaintiffs' conferral email promising supplemental interrogatory responses also stated that they were awaiting one more batch of documented communications about the MSI sale from another lawyer and would supplement their production as soon as they received them. Doc. 97-4.

the claim." FED. R. CIV. P. 26(b)(5)(b). Although not explicitly mandated by the Federal Rules, "[t]he first step in this process is to provide a privilege log." *Diamond Resorts U.S. Collection Dev., LLC v. US Consumer Att'ys, P.A.*, 519 F. Supp. 3d 1184, 1198 (S.D. Fla. 2021).

To justify the withholding of certain responses, Plaintiffs rely on attorney-client privilege and spousal privilege. Texas courts recognize both the attorney-client privilege and a spousal communication privilege. *See, e.g., In re Stephens Inc.,* 579 S.W.3d 438, 445 (Tex. App. 2019) (recognizing the attorney-client privilege in a civil discovery context); *Cooper v. Cochran*, 288 S.W.3d 522, 539 (Tex. App. 2009) (recognizing a privilege in civil cases for "confidential communications between married persons").

Plaintiffs invoked the attorney-client privilege in response to several of Defendant's requests for production (*see* Doc. 93-2, p. 12) and provided a corresponding privilege log. *See* Doc. 97-3. Defendant does not contest (or acknowledge) Plaintiffs' invocation of the privilege, and the Court declines to compel Plaintiffs to produce any documents over which they have claimed attorney-client privilege when no specific objection challenges the designation.

Plaintiffs' invocation of spousal privilege over certain communications, however, appears to have been made for the first time in their response to Defendant's motion. That is, unlike their attorney-client privilege claims, Plaintiffs did not mention a spousal privilege in any of their responses to

30

Defendant's requests for production, nor did that privilege appear on their privilege log. *See generally* Docs. 93-2, 97-3. Courts in this District routinely require parties resisting discovery on the basis of a spousal communications privilege to produce a privilege log identifying the documents being withheld. *See, e.g., Disney Enters., Inc. v. Secret Dis Grp. LLC*, 2024 WL 621598, at *4 (M.D. Fla. Feb. 14, 2024) (overruling a defendant's spousal communications privilege objection to discovery requests in part because they failed to produce a privilege log); *Classic Soft Trim, Inc. v. Albert*, 2020 WL 6730924, at *5 (M.D. Fla. Aug. 18, 2020) (ordering a defendant to produce a privilege log to substantiate its objections to discovery requests based on a vague invocation of the spousal communications privilege).

Thus, while a spousal privilege, if properly applied, may be a lawful basis on which to oppose Defendant's motion to compel discovery of some Plaintiffs' communications, Plaintiffs have failed to properly invoke that privilege. Plaintiffs omit any mention of the privilege from their discovery responses and privilege log.  And Plaintiff's assert in their response to Defendant's motion only that it may apply to "possible communications Plaintiffs may have had with their spouses." Doc. 97, p. 7. This vague reference to the applicability of the marital communications privilege falls well short of Plaintiffs' duty to "describe the nature of the documents" that are being withheld in a way that "will enable other parties to assess the claim." *See* Fed. R. Civ. P. 26(b)(5)(b).

31

Defendant' motion to compel responses to Requests 18-19, 21-24, 26-28, 30, 34-36 will be granted to the extent that Plaintiffs must either provide all responsive documents in their possession that are not protected by a privilege properly invoked in their responses, or immediately supplement their privilege log and answers to identify the communications they withhold based on the marital communications privilege.[10]

### C. Plaintiffs' Tax Documents (Request 44)

Finally, Defendant moved to compel Plaintiffs' response to Request for Production 44, which seeks "all Documents relating to any taxes you filed including, without limitation, all Documents that you filed in support thereof or that you provided to any Person who provided accounting or tax services to you or on your behalf." As they did to the requests for IAS's documents, Plaintiffs object that their tax information is irrelevant to this litigation. Doc. 97, pp. 9-10. In contrast to Defendant's requests for IAS documents, however, Defendant does not provide any argument for the relevance of Plaintiff's tax documents. Instead, Defendant simply identifies Request 44 in his motion as

---

[10] Plaintiffs did not assert in their discovery responses or in their motion that their spousal communications were so abundant that identifying or logging them would be unduly burdensome or disproportional to the needs of the case.

one to which Plaintiffs have not responded[11] (*see* Doc. 93, p. 10); he mentions taxes nowhere else in his motion.

Here, without the benefit of an explanation from Defendant the relevance of Plaintiffs' taxes is not immediately obvious. As Plaintiffs point out, they do not dispute Defendant's assertion that they received about forty million dollars in compensation from MSI, nor that they received two million dollars pursuant to the Bonus Agreement. However, upon examination of the pleadings, it appears that Plaintiffs' taxes are related enough to Defendant's counterclaims to clear the low bar of relevance in the discovery context. As part of the basis for Defendant's counterclaim seeking a declaratory judgment that Plaintiffs were not MSI employees, Defendant alleges that "neither Everington nor White have paid federal income taxes or received any tax benefits attributable to any profit or loss generated by MSI." Counterclaim, Doc. 85 ¶ 43. In their responsive pleading, Plaintiffs answer: "Admitted only to the extent that Plaintiffs did not pay United States Federal taxes. Plaintiffs deny any remaining allegations set forth in paragraph 43 of the Counterclaim." Reply to Answer/Counterclaim, Doc. 86, ¶ 43. Thus, there appears to be disagreement between the parties as to whether any of the Plaintiffs' tax

---

[11] Plaintiffs' responses to the requests for production reflect that they objected to the request as seeking irrelevant information contemporaneously with providing other responsive discovery. *See* Doc. 93-4, p. 26.

documents (which are not limited to "United States Federal taxes" in either
the counterclaim nor in Defendant's Request 44) would reflect in some way
Plaintiffs' relationship to or interest in MSI.

For that reason, Defendant's motion to compel Plaintiffs' response to
Request 44 is granted. Plaintiffs may redact any personal and entirely
irrelevant information from the tax documents they produce.

### c. The Parties' Motions for Attorney's Fees

In addition to moving to compel discovery, both parties ask the Court to
award them the costs and fees they expended in litigating the motions. Doc.
91, p. 13; Doc. 93, p. 12. Under Federal Rule of Civil Procedure 37(a)(5)(A), the
court "must" grant a party that prevails on a motion to compel discovery,
unless (i) that party filed the motion before conferring with the other party,
(ii) the other party's failure to disclose was "substantially justified," or
(iii) other circumstances make an award unjust. Separately, under Rule
37(a)(5)(C), the court "may" grant attorney's fees to a party who *partially*
prevails on such a motion.

Here, given that both parties required court intervention to produce
discovery and neither party fully prevailed in its requests, I deny their motions
as unjust under the circumstances. Both parties shall bear their own costs and
fees incurred in litigating these motions.

34

## IV.    Conclusion

For the reasons stated, it is hereby ORDERED:

1. Plaintiffs' motion to compel production of discovery responsive to Plaintiffs' Requests for Production 12, 13, and 14 is GRANTED IN PART and DENIED IN PART:

    a. Plaintiffs' motion to compel production of discovery responsive to Plaintiffs' Requests 12 and 13 is GRANTED;

    b. Plaintiff's motion to compel production of discovery responsive to Request 14 is GRANTED IN PART, Defendant must disclose the amount Defendant received from the settlement. This aspect of the motion is otherwise DENIED;

2. Defendant's motion to compel is GRANTED IN PART AND DENIED IN PART.

    a. The motion to compel Plaintiffs to respond to Interrogatory 15 is GRANTED. Plaintiffs must immediately supplement their response to Interrogatory 15, and supplement it again after receiving additional discovery from Defendant;

    b. The motion to compel production of discovery responsive to Defendant's Requests for Production 10, 11 and 12 is GRANTED;

    c. The motion to compel production of discovery responsive to Requests 18-19, 21-24, 26-28, 30, and 34-36 is GRANTED to the extent the Plaintiffs must either (1) update their responses and privilege log to reflect the applicability of the marital communication privilege, or (2) produce any responsive communications not protected by the attorney-client privilege. The motion is otherwise DENIED;

    d. Defendant's motion to compel production of discovery responsive to Request 44 is GRANTED.

3. The Parties motions for attorneys fees and costs are DENIED.

4. All productions required by this order must be made on or before December 30, 2025.

    DONE and ORDERED on December 11, 2025.

_Natalie Hirt Adams_
NATALIE HIRT ADAMS
United States Magistrate Judge