UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALEXIS EVERINGTON and
RICHARD WHITE,

        Plaintiffs,

v.                            Case No. 8:23-cv-2386-NHA

TIMOTHY J. RIESEN,

        Defendant.

_____/

## **ORDER**

This matter comes before the Court *sua sponte* for consideration of dismissal of this action.

This case concerns a dispute over the sale of a corporation, Madison Springfield, Inc. ("MSI"). Plaintiffs Alexis Everington and Richard White bring claims for breach of fiduciary duty, breach of contract, fraudulent misrepresentation, and unjust enrichment against Defendant Timothy Riesen, alleging that Defendant's acts and omissions surrounding his sale of MSI violated oral partnership agreements and written stock option agreements between Defendant and Plaintiffs. Second Amend. Compl., Doc. 82. Specifically, Plaintiffs allege that Defendant is liable to them for his failure to consult them prior to his sale of MSI to Premise Data Corporation and for his refusal to allow Plaintiffs to exercise their alleged stock options following the

sale. *Id.* ¶¶ 6-11. Defendant brings counterclaims for declaratory relief that Plaintiffs had no enforceable interests in MSI or its proceeds, and, in the alternative, counterclaims for equitable accounting, unjust enrichment, and rescission. Answer, Doc. 85 pp. 68-77.

On May 22, 2026, the Court issued a Show Cause Order in which it observed that "Plaintiffs appear to allege that their business arrangement with Defendant was not documented or was otherwise obscured because it would have made the parties' business ineligible for certain contracts under the laws, regulations, or practices of the United States," and ordered the parties to show cause as to why the alleged agreement at the center of this case would not be unenforceable as unlawful. Doc. 170. The Court held a hearing on the Show Cause Order on June 4, 2026. At the hearing, Plaintiffs argued that the alleged partnership would not have been illegal, while Defendant stated it concurred with the Court that the alleged partnership, if it existed, would have been illegal and could not be judicially enforced for that reason. Defendant sought leave to brief whether his counterclaims against Plaintiffs would be moot if the Court dismissed Plaintiff's claims on the proposed basis.

"[A] federal court has a duty to determine whether a contract violates federal law before enforcing it." *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72, 83, (1982). The rule "that a court may refuse to enforce contracts that violate law or public policy. . . derives from the basic notion that no court will lend its aid

to one who founds a cause of action upon an immoral or illegal act." *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 42 (1987). "Even in diversity actions, the effect of an act made illegal by a federal statute is to be decided by federal, not state, law." *Columbia Nitrogen Corp. v. Royster Co.*, 451 F.2d 3, 14 (4th Cir. 1971) (citing *Sola Electric Co. v. Jefferson Electric Co.*, 317 U.S. 173, 176 (1942)). When a party seeks to enforce a contract that appears to be illegal, "[t]he Court itself is bound to raise the issue *sua sponte*." *I.U.B.A.C. Loc. Union No. 31 v. Anastasi Bros. Corp.*, 600 F. Supp. 92 (S.D. Fla. 1984) (citing *Nyhus v. Travel Management Corp.,* 466 F.2d 440, 447 (D.C.Cir.1972), *California Pacific Bank v. Small Business Admin.,* 557 F.2d 218, 223 (9th Cir.1977)).

Here, MSI was a government contractor subject to the Foreign Ownership, Control, or Influence (FOCI) regulations in 32 C.F.R., Part 117. The FOCI regulations include a complex compliance/mitigation scheme for contractors that the United States identifies as "under FOCI." *See* 32 C.F.R. § 117.11. A contractor is considered to be "under FOCI" if "any person who is not a citizen or national of the United States" has decision-making authority for the company's management or operations. *Id.* §§ 117.3, 117.11. As such, contractors subject to the FOCI regulations are required to submit a Form SF-328, disclosing any aspects of their ownership or control which may be relevant to a FOCI inquiry, during the contract vetting process, "or when significant

3

changes occur." *Id.* § 117.11(c). The Form SF-328 itself warns that failing to answer any of its questions truthfully, including by omission, concealment, or by misleading answers "on any important particular" is a federal crime under 18 USC § 1001. At least one former government defense contractor has been criminally convicted for falsely denying the existence of links between itself and foreign interests on a "Certificate Pertaining to Foreign Interests" form. *See U.S. v. Dale*, 991 F.2d 819, 833–34 (D.C. Cir. 1993).

As the Court highlighted at the June 4 hearing, Plaintiffs' Second Amended Complaint alleges the following facts:

- That Defendant "maintained that it would not be possible for [Plaintiffs], given that they were not citizens of the United States, to be owners of a business securing and implementing work of the sensitive nature that they had previously worked on for the United States government," and that because Plaintiffs "knew no better," they allowed Defendant to solely own MSI on paper, but entered "an oral agreement with [Defendant] to work as partners to form and develop MSI." Doc. 82 ¶¶ 1–2.

- That Plaintiffs believed that "the United States government would find foreign firm ownership disqualifying for the type of government contracts [MSI] would seek to win," so agreed that Defendant "would formally own 100% of the new venture but that

4

some other way of compensating the two other partners could be found." *Id.* ¶¶ 22–23.

- That Plaintiffs agreed to forego documenting their ownership interests in MSI, despite believing they were partners in the business, because they "believed [Defendant]'s representations that this was the mechanism in which [sic] they had to take in order to compete and complete contracts sensitive in nature in the United States defense sector." *Id.* ¶ 34.

- That Plaintiffs and Defendant had a "pre-formation agreement to work as partners" in MSI, which was partially formalized after years of completing government contracts through MSI. *Id.* ¶¶ 39–42.

- That, even after partially formalizing the pre-formation agreement, Plaintiffs and Defendant "continued with their oral agreement to work as partners in developing Madison Springfield into a lucrative business to sell the company for a sizable profit in which they would all share in the proceeds" [sic]. *Id.* ¶ 48.

- That Plaintiffs' damages include "loss of partnership control." *Id.* ¶ 115.

- That, "At all material times, Plaintiffs rightly believed they were partners with" Defendant. *Id.* ¶ 159.

In the Court's view, these alleged facts suggest that Plaintiffs conspired or attempted to cause Defendant to knowingly submit false information about MSI's foreign ownership status in violation of the FOCI regulations and of 18 USC § 1001—regardless of whether Defendant did in fact submit false or misleading Form SF-328 disclosures. Additionally, Plaintiffs' allegation that the three men declined to document Plaintiffs' alleged partnership status because "the United States government would find foreign firm ownership disqualifying for the type of government contracts [MSI] would seek to win," *see* Doc. 82 ¶¶ 22–23, appears to describe a conspiracy to defraud the United States in violation of the "defraud clause" of 18 U.S.C. § 371, which "reaches any conspiracy for the purpose of impairing, obstructing, or defeating the lawful function of any department of government." *See U.S. v. Sans*, 731 F.2d 1521, 1534 (11th Cir. 1984) (quotation marks and citation omitted). Finally, in light of all these alleged facts, the submission of bids to the government and the use of a secure internet messaging platform to discuss it, *see, e.g.,* Doc. 82 ¶¶ 61, 158, could also be read to describe wire fraud in violation of 18 U.S.C. § 1343.

Upon consideration of the foregoing principles and highlighted allegations, the parties are invited to provide written responses, on or before July 8, 2026, as to whether the case should be dismissed on the pleadings. The parties are also invited to address how the Court should handle Defendant's

6

counterclaims, in the event it concludes that the alleged partnership agreement is unenforceable. The Court will construe a party's failure to file a written response by July 8 as an indication that the party does not oppose dismissal of the claims and counterclaims.[1]

ORDERED on June 24, 2026.

NATALIE HIRT ADAMS
United States Magistrate Judge

---

[1] The Court acknowledges that Defendant already submitted a paper, prior to the May 4 hearing, briefly stating his position that Plaintiff's claims against him should be dismissed for illegality. *See* Doc. 172. Defendant may elaborate on his position if he wishes, but if he does not, the Court assumes his position as to Plaintiff's claims remains unchanged.